[No. F003342. Fifth Dist. Feb. 15, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
LUIS VERA RESENDES, Defendant and Appellant.

**COUNSEL**

Juliana Drous, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Eddie T. Keller and Jane N. Kirkland, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**THE COURT.**\*—Appellant was convicted after jury trial of sale of heroin, possession of a sawed-off shotgun, and carrying a loaded firearm in public. He was sentenced to prison for the three-year middle base term. On appeal from the judgment, he contends that the providing of only one interpreter for himself and his codefendant violated his constitutional rights to an interpreter throughout the proceedings (Cal. Const., art. I, § 14) and to the effective assistance of counsel (U.S. Const., Amends. 6, 14; Cal. Const., art. I, § 15). Respondent counters that a defendant unable to understand English is not entitled to his own personal defense interpreter.

In *People* v. *Rioz* (1984) 161 Cal.App.3d 905 [207 Cal.Rptr. 903], one interpreter was provided for all four Spanish-speaking defendants, each of whom listened to the interpretation through an earphone/headset. Relying on the Supreme Court's decision in *People* v. *Aguilar* (1984) 35 Cal.3d 785 [200 Cal.Rptr. 908, 677 P.2d 1198], we held that this procedure deprived each defendant of his constitutional right to an interpreter. Applying the informed speculation standard which this court adopted in *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843], we reversed. We reasoned as follows: "[I]n any proceeding at which witnesses are called and testimony taken, the fundamental rights of a defendant to understand the proceedings being taken against him and to immediately communicate with counsel when the need arises require that each non-English-speaking defendant be afforded an individual interpreter throughout the proceedings.

---

*Before Brown (G. A.), P. J., Franson, J., and Woolpert, J.

"This leaves only the question of the standard to be applied in determining whether reversal is required. In *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843] this court recognized reversible error only when the defendant can show he suffered prejudice from the lack of defense interpreter services. The court pointed out, however, that the prejudice need not be actual; like the flexible standard developed by the Supreme Court to deal with effective assistance of counsel, only informed speculation that the defendant's right to a fair trial has been compromised need be shown.

"Although defendants have argued that a more stringent standard than that announced in *People* v. *Carreon, supra*, should be applied, we need not decide on the facts of this case whether requiring multiple defendants to share a single interpreter constitutes reversible error per se or whether such error impinges on rights protected by the United States Constitution, thus mandating review under *Chapman* v. *California* (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065]. Since the one interpreter could not act even as a proceedings interpreter and as defense interpreter for all defendants, the conclusion is inescapable that each of the defendants did not know at all times what was going on in the proceedings, or they had no effective means of communicating with their respective attorneys at critical points of the trial, or both. These critical points of the trial necessarily occurred during the victim's testimony and the testimony of other witnesses in the case. Under the *Carreon* standard, reversal of the conviction of each defendant is therefore required." (*People* v. *Rioz, supra*, 161 Cal.App.3d 905, 913.)

■ *Rioz* specifically holds that each defendant unable to understand English is constitutionally entitled to his own separate interpreter. Further, that *Rioz* involved four such defendants, while the instant case involved but two, is a distinction without a difference and one not urged by respondent.

On the first morning of trial, this colloquy occurred outside the jury's presence: "[THE COURT:] The Record [*sic*] will show that both defendants are present in court. Mr. Lara is here with his attorney, Mr. Marvin Schultz. Mr. Resendes is here with his attorney, Mr. Michael Farmer. [¶] Also present is the court interpreter, Mr. Ed Saldivar who is using the microphone and each defendant has an ear piece in his ear. [¶] And the interpreter is interpreting for both defendants simultaneously. [¶] Is this arrangement agreeable with both defense counsel?

"MR. FARMER: Yes.

"MR. SCHULTZ: Yes, Your Honor, at this time, as we discussed hearing the defense case, perhaps it would be more appropriate to have the second

interpreter. [¶] At this stage of the proceedings, I don't understand any problem with it.

"THE COURT: All right. Fine. I would like to tell each of the defendants, if you wish during the proceedings to communicate with your attorney, you raise your hand and get my attention and we will stop the proceedings. And the interpreter well [*sic*] interpret only for you and your attorney. And that's at any time during these proceedings. [¶] Do you understand that Mr. Lara?

"DEFENDANT LARA: (Nods head.)

"THE COURT: Do you understand that, Mr. Resendes?

"DEFENDANT RESENDES: Yes."

The question reduces to whether the procedure followed here is a permissible exception to the requirement of an interpreter for each non-English-speaking defendant.

Preliminarily, we note that respondent has *not* argued that appellant waived any claim of a right to a separate interpreter. In *People* v. *Aguilar, supra,* 35 Cal.3d 785, the Supreme Court held "[A] personal waiver by the defendant was required. The mere acquiescence by counsel did not waive the right to interpreter assistance." (*Id.,* p. 794.) The court concluded that the record did not show that the defendant knew he had a right to an interpreter throughout the proceedings, that his inaction in demanding his personal right was not a waiver, and that no voluntary and intentional waiver appeared in the record. (*Ibid.*)

As in *Aguilar,* here, the record does not show appellant's voluntary, intentional waiver. The judge asked whether the one-interpreter simultaneous-interpretation procedure was agreeable "with both defense counsel." After securing such agreement, the judge neither informed appellant that he had a right to his own interpreter nor asked appellant whether the procedure was agreeable with him. Rather, the judge simply asked each defendant whether he *understood* a procedure which was being imposed without the defendant's personal agreement. Thus, no waiver occurred.

Respondent argues at length that the procedure for communication between appellant and his counsel eliminated any constitutional problem. For reasons to be stated, we do not agree. In *People* v. *Carreon, supra,* 151 Cal.App.3d 559, in discussing the related problem of the borrowing of the defense interpreter for use as a witness interpreter during part of the trial, we explained: "It is not only constitutionally essential but also emi-

nently reasonable to require the appointment of a separate interpreter to facilitate communication between a defendant and his counsel 'throughout the proceedings' and not to permit the defense interpreter to perform an additional role of interpreting witnesses' testimony for the court. The present case illustrates the point. When the Spanish-speaking victim was testifying, the interpreter was chiefly concerned with translating his testimony for the court and was not readily available to facilitate consultation between defendant and his counsel. It is true that if defense counsel and defendant wanted to consult one another, they could indicate their desire to do so and the interpreter would be made available to them, thereby interrupting the proceeding. Such an arrangement would significantly inhibit attorney-client communication. Simply put, it would require the defendant, in order to accomplish the otherwise simple task of consulting his counsel, to somehow make his intention known to the court and call the interpreter back to the counsel table. During the attorney-client conversation, attention undoubtedly would focus upon the scene at the counsel table, as occurs when counsel approach the bench for a private consultation with the court.

"For defense counsel's part, the risk of alienating or antagonizing the jury or bench would infuse the mere act of speaking to his client with considerations of strategy and tactics, in contrast to the English-speaking defendant whose consultation would be unobtrusive and likely to go unnoticed. Communication between counsel and defendant should not be hampered by such concerns, nor should the exercise of a constitutional right depend upon whether the defendant is assertive enough to bring attention to himself." (*Id.*, pp. 570-571.)

Respondent attempts to distinguish *Carreon* on the basis that the interruption procedure here was court-sanctioned. In other words, the judge's authorization of a specific procedure both informed appellant how to invoke his right to communicate with counsel and removed any chilling effect which might flow from fear of alienating judge or jury by interrupting the proceedings.

We are not persuaded. Even though the judge sanctions an interruption procedure and so informs the jury—which apparently he did not do here—a defendant must affirmatively interrupt proceedings each and every time he wants to invoke his *constitutional* right to communicate with counsel. Invocation of such a right should not be held hostage to a lingering fear that a jury wholly or mainly composed of monolingual English-speaking persons may view the non-English-speaking defendant as an obstructionist or at least a minor irritant.

While a given defendant might initiate a small number of interruptions, his willingness to continue interrupting the proceedings might be expected

to vary inversely with the number of occasions. Of course, it is impossible to forecast in advance of trial how many times a defendant may wish to communicate with counsel. Unlike, for example, peremptory challenges, the right to communicate is not subject to a numerical limit.

Finally, requiring a defendant to relay confidential communications to counsel through the interpreter for his codefendant with conflicting interests introduces another possible chill to the communication process. Respondent makes light of the Supreme Court's suggestion in *Aguilar* that the defense interpreter may be torn by feelings of partiality. (*People* v. *Aguilar, supra,* 35 Cal.3d 785, 793.) Respondent likens the interpreter to a court reporter, "impartial servants of the justice system, doing an objectively measurable task." The court reporter analogy may be valid for a witness interpreter. It is singularly unpersuasive when extended to a defense interpreter.

Unlike a court reporter, a defense interpreter is privy to confidential attorney-client communications. In a very real sense, if only because of linguistic necessity for the duration of trial he is part of the defense team. In *People* v. *Carreon, supra,* 151 Cal.App.3d 559, we recognized he has a "potentially partisan role": "Additionally, the defense interpreter is party to privileged communications in nonstructured conditions which may require something more than mere translation. At times the interpreter may have to accede to the desires of defense counsel whose work in the courtroom and in private conferences with the defendant may require the interpreter to vary the more routine services he would perform as a witness interpreter. His presence may assist defense counsel in assuring that testimony is being accurately translated. . . ." (*Id.,* p. 572.)

While we agree with respondent that we should not presume that an interpreter will act unethically, neither should we be blind to the appearance created by forcing him to be privy to confidential information from multiple defendants whose interests conflict. Moreover, even if we accept the moral imposition on the interpreter himself, we cannot ignore the risk that the defendant's subjective fears may deter him from relaying confidential information to his counsel through his codefendant's interpreter.

For these reasons, appellant was denied his constitutional right to an interpreter despite the ad hoc procedure used here.

■ Respondent argues that no prejudice occurred in light of appellant's failure to use the ad hoc procedure and the absence of any allegation that in fact he wished to communicate with counsel but was unable to do so. We reversed in *Rioz* in the absence of any such allegation. Further, it is impossible to say what the appellant's nonuse of the ad hoc procedure meant. The

parties draw diametrically opposed inferences on this score. Appellant infers that the procedure inhibited any communication; respondent, that appellant had nothing to say.

The basic fact is that throughout the presentation at trial of both prosecution and defense evidence, except where his codefendant testified, appellant was required to share one interpreter with his codefendant under a procedure which inhibited effective communication with counsel. Under the informed speculation standard, we must reverse. (*People* v. *Rioz, supra,* 161 Cal.App.3d 905, 913; *People* v. *Nieblas* (1984) 161 Cal.App.3d 527 [207 Cal.Rptr. 695].) We need not decide whether or when a more stringent standard of prejudice might apply.

The judgment is reversed.