[No. G009552. Fourth Dist., Div. Three. June 23, 1991.]

THE PEOPLE, Plaintiff and Respondent, v.
JAVIER DOROTEO CHAVEZ, Defendant and Appellant.

**[Opinion certified for partial publication.*]**

---

*Pursuant to California Rules of Court, rule 976(b), part IV of the discussion is not published, because it does not meet the standards for publication.

1472

**COUNSEL**

Richard L. Schwartzberg, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Louis R. Hanoian and Esteban Hernandez, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**MOORE, J.**—Javier Doroteo Chavez was charged with receiving stolen property (Pen. Code, § 496, subd. 1) and grand theft of an automobile (Pen. Code, § 487h, subd. (a).) It was also alleged defendant had suffered a prior

term of imprisonment for robbery pursuant to Penal Code section 667.5, subdivision (b).[1]

After a jury trial, defendant was acquitted of receiving stolen property but convicted of grand theft of an automobile. Defendant waived a jury as to the prior term of imprisonment allegation, and the court found the allegation to be true. Defendant was sentenced to state prison for a term of three years for grand theft and a consecutive term of one year was imposed for the prior term of imprisonment.

On appeal defendant contends the trial court erred in not providing him with his own interpreter during the reading of jury instructions. Defendant also contends the trial court erred in failing to conduct a hearing into alleged juror misconduct. Finally, defendant contends the trial court erred in failing to state reasons for the denial of probation and imposition of a prison term. We agree with defendant's first two contentions relating to the conviction itself, but do not find they compel reversal. We also agree the trial court committed error in sentencing defendant, and remand the case to the trial court for resentencing.

## I

### FACTS

In the early morning hours of January 11, 1990, Officer Todd Mattern of the Los Alamitos Police Department was on patrol near Katella and Bloomfield Avenues. He saw two vehicles parked next to one another with both their hoods up. One vehicle was a Ford Thunderbird and the other a Volkswagen. Defendant was standing next to the open passenger door of the Volkswagen and his codefendant, Roberto Chavez, was standing between the two vehicles. Officer Mattern approached the individuals and asked them if they needed any assistance. Defendant told Mattern the Volkswagen belonged to a friend of his.

During the time Mattern and defendant were engaged in conversation, another Los Alamitos police officer, Brendan Hayes, arrived to assist Mattern. Officer Hayes noticed the window of the Volkswagen was broken. The ignition was also "punched." The police dispatcher was contacted and requested to identify and contact the owner of the Volkswagen.

The owner of the Volkswagen was John Skaggs. Skaggs had not given anybody permission to drive or take his vehicle; he had not even noticed it

---

[1]All statutory references are to the Penal Code unless otherwise indicated.

missing. Skaggs drove to the location of Katella and Bloomfield and identified the Volkswagen. Defendant and his codefendant were then arrested.

### Defense

Defendant did not testify. Codefendant Roberto Chavez testified defendant had called him and asked him for a ride home from his location in Los Alamitos on Katella Avenue. When Chavez arrived, defendant was in possession of the Volkswagen. Defendant told Chavez his friend had left the car to make a telephone call and had not returned. Defendant suggested to Chavez they steal the car's battery. While engaged in attempting to steal the battery, police arrived and arrested them.

## II

### THE FACT DEFENDANT SHARED AN INTERPRETER WITH HIS CODEFENDANT DURING THE COURT'S READING OF JURY INSTRUCTIONS DOES NOT COMPEL REVERSAL OF HIS CONVICTION

Defendant contends the trial court erred in denying him an interpreter during the reading of jury instructions and this error compels reversal of his conviction. We disagree.

Initially, we must settle a dispute as to the facts which arises from a deficiency in the record. Defendant claims the jury instructions were not interpreted into Spanish whatsoever. He relies upon a colloquy which occurred between the court and both counsel wherein a joint request was made by counsel for separate interpreters, each of whom would interpret the jury instructions for their defendant. This request was denied by the trial court and the court recessed for the evening. However, on the next morning, the reporter's transcript indicates two interpreters were present at the commencement of argument during the morning session, which included both argument and the reading of instructions. In the afternoon session, the court corrected one instruction which it reread to the jury. At this session, the reporter's transcript indicates only one interpreter was present for both defendants. The reporter's transcript does not indicate at what point the number of interpreters was reduced from two to one. However, the reporter's transcript does contain a short colloquy between the court and both counsel which occurred at the conclusion of the morning session. The court stated: "During these instructions, by previous agreement, we've been using one court interpreter, and for the record, is that satisfactory, Mr. Knox [counsel for defendant]? [¶] Mr. Knox: Yes. [¶] The Court: And Mr. Horan [counsel for codefendant]? [¶] Mr. Horan: Yes."

The clerk's transcript indicates that on the morning argument commenced, two interpreters were present. The prosecutor made her closing argument, followed by the argument of defendant's trial counsel. A recess was taken at 10:50 a.m. and one of the interpreters was excused from the reading of instructions by stipulation of counsel. This stipulation occurred off the record and thus does not appear in the reporter's transcript. At 11:10 a.m. trial was resumed. Both interpreters were still present. Closing arguments were concluded. One of the interpreters left the courtroom. The other interpreter remained and jury instructions were read. The interpreter who remained interpreted the instructions for both defendants.

Defendant nevertheless claims he did not have access to any interpretation whatsoever during the reading of instructions. This claim is belied by both the clerk's and reporter's transcripts. Appellate review would have been facilitated had all of these matters been made part of the reporter's transcript. However, reference to the clerk's transcript is clear and unambiguous, and the clerk's transcript comports with the reporter's transcript to the extent the latter makes mention of these proceedings.[2]

While the clerk's transcript indicates counsel for both defendants stipulated only one reporter needed to be present during instructions, there is no indication of a personal waiver by defendant of his right to an individual interpreter. Article I, section 14 of the California Constitution provides that "[a] person unable to understand English who is charged with a crime has a right to an interpreter throughout the proceedings." Our Supreme Court has stated that "The defendant's right to understand the instructions and rulings of the judge, the questions and objections of defense counsel and the prosecution, as well as the testimony of the witnesses is a continuous one. At moments crucial to the defense—when evidentiary rulings and jury instructions are given by the court, when damaging testimony is being introduced— the non-English speaking defendant who is denied the assistance of an interpreter, is unable to communicate with the court or with counsel and is unable to understand and participate in the proceedings which hold the key to freedom." (*People* v. *Aguilar* (1984) 35 Cal.3d 785, 790-791 [200 Cal.Rptr. 908, 677 P.2d 1198].) Thus defendant had a right under the California Constitution to an interpreter during jury instructions. This right

---

[2]We take this opportunity to urge trial judges to ensure that all matters relating to the rights of defendants and to waivers and stipulations regarding those rights are made part of the reporter's transcript. We frown upon "off the record" proceedings for the very reason indicated in this case: appellate review is made much more difficult. Trial courts should only go off the record sparingly, if at all, and any proceedings occurring off the record should later be recounted in full on the record so that the reporter's transcript will contain a full recitation of them.

was not personally waived by defendant, and a stipulation by counsel can never in itself serve as a valid waiver of this right. (*Id.* at pp. 794-795.)

With respect to the issue of the shared interpreter, in *People* v. *Resendes* (1985) 164 Cal.App.3d 812 [210 Cal.Rptr. 609], the court reversed a conviction wherein defendant was required to share an interpreter with his codefendant *throughout the trial.* The court noted defendant was forced to sacrifice either his understanding of the proceedings or his ability to immediately communicate with counsel by having only one interpreter shared with his codefendant. Accordingly, the court, employing an "informed speculation" of prejudice standard of review, found the deprivation of defendant's right to an individual interpreter to be reversible error. (*Id.* at p. 815.) A fair reading of *Resendes* and *Aguilar, supra*, indicates that a defendant has a right to an individual interpreter throughout all stages of the criminal proceedings, including jury instructions. Absent a knowing and intelligent personal waiver of this right, even a "shared" interpreter during any portion of the trial proceedings will constitute error. We must therefore determine the import of the trial court's error.

In *Resendes,* the court employed a standard developed in *People* v. *Carreon* (1984) 151 Cal.App.3d 559 [198 Cal.Rptr. 843] for determining when the deprivation of the right to an interpreter will constitute reversible error. Reversible error will only occur when defendant can show he suffered prejudice from the lack of an interpreter. That prejudice need not be actual, however; by analogy to the standard developed by the Supreme Court to deal with the effective assistance of counsel, only informed speculation that defendant's right to a fair trial was impacted need be shown. (*People* v. *Resendes, supra*, 164 Cal.App.3d at p. 815.)

However, in *People* v. *Rodriguez* (1986) 42 Cal.3d 1005 [232 Cal.Rptr. 132, 728 P.2d 202], our Supreme Court employed the "harmless beyond a reasonable doubt" standard of review in examining whether the deprivation of a defendant's constitutional right to an individual interpreter will require reversal. (*Id.* at pp. 1010-1013.) By implication, *Rodriguez* overrules *People* v. *Carreon, supra*, 151 Cal.App.3d 559 and *People* v. *Resendes, supra*, 164 Cal.App.3d 812 to the extent they apply the "informed speculation" standard. After *Rodriguez,* the *Chapman* standard of "harmless beyond a reasonable doubt" applies.[3]

Defendant contends *People* v. *Aguilar, supra*, 35 Cal.3d at page 794 establishes a "reversal per se" standard of review in denial of interpreter

---

[3] *Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065].

cases. This contention is based upon one sentence of the opinion which states that "A reversal is required unless the defendant waived the constitutional right we have described." (*Ibid.*) The standard of review is given no further mention. In *People* v. *Rodriguez, supra,* 42 Cal.3d 1005, the court cites *Aguilar* and asserts *Aguilar* did not adopt any particular standard of review. (*Id.* at p. 1010.) If the *Aguilar* court did employ a "reversible per se" standard of review, it is unclear to us whether they meant to limit this standard of review to certain kinds of denial of interpreter cases or to apply it to all such cases, without regard to their specific facts. ▮ We need not determine this issue, however, because "cases, of course, are not authority for propositions not there considered." (*People* v. *Ceballos* (1974) 12 Cal.3d 470, 481 [116 Cal.Rptr. 233, 526 P.2d 241], citations omitted.) ▮ And, the court's later opinion in *Rodriguez* states the appropriate standard of review in denial of interpreter cases is "harmless beyond a reasonable doubt."

Neither *People* v. *Aguilar, supra,* 35 Cal.3d 785 nor the other aforementioned cases are factually apposite to the case at bench. All deal with situations where defendants were denied interpreter services during crucial portions of trial testimony. While we are mindful that our Supreme Court in *Aguilar* has stated in dictum that the reading of jury instructions is a critical phase of the proceedings which requires an individual interpreter, we find no published decisions which deal specifically with the deprivation of an individual interpreter during jury instructions. *Aguilar* itself involved the borrowing of defendant's interpreter on two occasions to act as a witness interpreter. Here, defendants were provided with a shared interpretation of the court's reading of jury instructions. There is no indication anything resulted during the reading of those instructions which required communication between defendant and his counsel. Defendant was provided with his own, individual interpreter throughout virtually all of the proceedings. Only the reading of instructions transpired while defendant was sharing an interpreter with his codefendant. Defendant was not denied an interpretation of the proceedings themselves, but was only denied an ability to communicate with counsel during this period of time. While we do not state that such a situation could never result in error requiring reversal, we are not prepared to say that, in this case, the court's error requires reversal. The record is devoid of any evidence of prejudice suffered by defendant as a result of the shared interpretation of jury instructions. Accordingly, we find the trial court's error was harmless beyond a reasonable doubt.

## III

### The Failure to Conduct an Inquiry Into Potential Juror Misconduct

■ Defendant contends the trial court erred in failing to conduct an inquiry into possible juror misconduct. During trial, the deputy district attorney indicated to the court she had seen one of the police officers speaking with a juror. The deputy district attorney stated: "While we are on the record, perhaps I could also just point out something that I've already talked to both opposing counsel about. My witness, when we approached, was talking to one of the jurors, and I informed both counsel of that fact. They've both talked to him, as have I, and it appears that no conversation took place regarding this trial. [¶] He now understands that's not appropriate and he cannot do that, but I guess he didn't understand that previously. So I wanted to bring that to your attention, also." The colloquy continued as follows: "The Court: Who was this? Ms. Menninger (deputy district attorney): The officer and one of the jurors. As we walked up, they were all talking. Not all, two of them. Mr. Horan (counsel for codefendant): I told her I had no problem. Mr. Knox (counsel for defendant): He said he didn't talk anything [*sic* ] about the case. Mr. Horan: I believe him, so I haven't any problem. The Court: And in the absence of anything to the contrary being brought to the attention of the court, I'll take no action. I don't find that there is any error." This short colloquy between the court and counsel comprises the entire reporter's record regarding this irregularity. No further testimony was taken subsequent to this incident and both sides rested.

Defendant cites *People* v. *McNeal* (1979) 90 Cal.App.3d 830 [153 Cal.Rptr. 706], and *People* v. *Burgener* (1986) 41 Cal.3d 505 [224 Cal.Rptr. 112, 714 P.2d 1251] as support for his contention the trial court was *required* to hold a hearing in this matter. In *McNeal,* the trial court received a note from a juror indicating the juror had personal knowledge about the case which ". . . definitely had a bearing on the way she will vote." (90 Cal.App.3d at p. 835.) The trial court made a cursory inquiry of the juror, and the appellate court reversed holding that section 1120 mandated a more extensive inquiry.[4] (*Id.* at p. 837.)

In *Burgener,* the jury foreman informed the trial court in chambers that one of the jurors had been intoxicated on the previous day and was presently

---

[4]Section 1120 provides: "If a juror has any personal knowledge respecting a fact in controversy in a cause, he must declare the same in open court during the trial. If, during the retirement of the jury, a juror declare a fact which could be evidence in the cause, as of his own knowledge, the jury must return into court. In either of these cases, the juror making the statement must be sworn as a witness and examined in the presence of the parties in order that the court may determine whether good cause exists for his discharge as a juror."

intoxicated as well. No hearing involving the juror was held. Though section 1120 did not apply to the facts of the case, the Supreme Court held that ". . . an inquiry sufficient to determine the facts is required whenever the court is put on notice that good cause to discharge a juror may exist." (41 Cal.3d at pp. 518-519.)

*Burgener* goes on to state that "Section 1123 gives the trial court the authority to discharge a juror 'found to be unable to perform his duty.' Section 1089 provides for the substitution of an alternate juror in the event one of the original jurors is discharged. The language of sections 1089 and 1123 is clearly discretionary, and section 1123 sets forth no procedure to determine whether a juror is unable to perform his duty. However, California cases construing these statutes have established that, once a juror's competence is called into question, a hearing to determine the facts is clearly contemplated. [Citations.] Failure to conduct a hearing sufficient to determine whether good cause to discharge the juror exists is an abuse of discretion subject to appellate review. [Citations.]" (41 Cal.3d at pp. 519-520, fn. omitted.)

The *Burgener* court equated evidence that good cause to discharge a juror may exist with ". . . notice that improper or external influences were being brought to bear on a juror . . . ." (41 Cal.3d at p. 518; see also *People* v. *Kaurish* (1990) 52 Cal.3d 648, 694 [276 Cal.Rptr. 788, 802 P.2d 278].) Thus a hearing is required whenever a court is made aware that a juror may have been subject to ". . . improper or external influences . . . ." (*Ibid.*)

Defendant also relies upon *People* v. *Pierce* (1979) 24 Cal.3d 199 [155 Cal.Rptr. 657, 595 P.2d 91]. In *Pierce,* our Supreme Court held a presumption of prejudice arose when a jury foreman, in derogation of the mandate of section 1122, and after being advised of same by the trial court, had a lengthy conversation with a neighbor who was a police officer and had been one of the first officers to arrive at the scene of the murder which was the subject of the trial.[5] The juror queried the officer about the state of the evidence, the method employed by the district attorney in presenting the case and other aspects of the case. The district attorney's office became aware of the conversation, and conducted an investigation, which was turned over to the trial court. It indicated that four distinct matters relating to the trial had been discussed. (24 Cal.3d at pp. 205-206.) The court held it was error for the trial court to rely on the district attorney's investigation and not to

---

[5]Section 1122 provides: "The jury must also, at each adjournment of the court before the submission of the cause to the jury, whether permitted to separate or kept in charge of officers, be admonished by the court that it is their duty not to converse among themselves or with anyone else on any subject connected with the trial, or to form or express any opinion thereon until the cause is finally submitted to them."

conduct an independent hearing into the juror's misconduct. The court held a presumption of prejudice had arisen which could only be rebutted after a full and thorough hearing. (*Id.* at pp. 206-209.) No such hearing was held, and since prejudice was presumed and not rebutted, defendant was entitled to a new trial. (*Id.* at p. 209.)

Defendant also relies upon *People* v. *Ryner* (1985) 164 Cal.App.3d 1075 [211 Cal.Rptr. 140], which is factually similar to the case at bench. In *Ryner,* during a morning recess at trial, the police officer who was currently on the stand engaged a number of jurors in conversation in a hallway outside the courtroom. Though no testimony nor any aspect of the case was discussed, the various topics of conversation included a recent football game, the kind of weapon the officer carried, his Vietnam military service, and the fact he was fatigued after working late the night before. The discussion was loud enough to require the bailiff to ask the group to quiet down at one point. (*Id.* at pp. 1080-1081.) Upon learning of the conversation, defendant moved for a mistrial. A hearing on the motion was held and the officer testified he anticipated in the conversation to ". . . be friendly and maintain good public relations." (*Id.* at p. 1081.) On appeal, defendant contended prejudice was presumed and had not been satisfactorily rebutted. The court held juror misconduct had occurred despite the fact the jurors did not discuss any matters relating to the case. The court indicated the officer's conduct could have resulted in his ingratiating himself to the jurors. The court noted jury misconduct is not prejudicial per se, but raises a presumption of prejudice, which can be rebutted by proof that no prejudice actually resulted. (*Id.* at p. 1082.) The presumption of prejudice was rebutted by an evaluation of the misconduct in light of the entire record, which led the court to find no actual prejudice had been demonstrated. (*Id.* at p. 1084.)

*Ryner* held juror misconduct can occur in ways other than those expressly stated by statute. The court indicated the juror speaking with a police officer, while not specifically falling within any statutory prohibition, nonetheless constituted juror misconduct and raised a presumption of prejudice. *Ryner* did not address the requirement of holding a hearing when an issue regarding potential juror misconduct is raised. In *Ryner,* defense counsel actually made a motion for mistrial, and a hearing was held based upon that motion.

The issues here presented are therefore twofold: (1) Must a hearing be held every time potential juror misconduct occurs? (2) Does potential juror misconduct always give rise to assumption of prejudice?

A. *Must a Hearing Be Held Everytime Potential Juror Misconduct Occurs?*

*People* v. *McNeal, supra,* 90 Cal.App.3d 830, and *People* v. *Burgener, supra,* 41 Cal.3d 505, indicate the trial court *must* inquire when an *issue* of juror misconduct is raised. What must the nature of that inquiry be, however? In *McNeal,* the nature of the inquiry was superficial and perfunctory; the trial court merely asked the juror if she could set aside any information outside the evidence and decide the case on the evidence presented. (90 Cal.App.3d at p. 836.) When the juror answered "yes," deliberations were resumed. The court indicated ". . . it is the court's duty to make whatever inquiry is reasonably necessary to determine if the juror should be discharged and whether the impartiality of the other jurors has been affected." (*Id.* at p. 839.) The court's failure to hold a more extensive hearing, as was required by section 1120, was determined to be reversible error under the "harmless beyond a reasonable doubt" standard. (90 Cal.App.3d at p. 846.) In *Burgener,* the court concluded that, even in the absence of a statutory mandate such as section 1120, requiring that a hearing be held, an inquiry ". . . sufficient to determine the facts is required whenever the court is put on notice that good cause to discharge a juror may exist." (41 Cal.3d at pp. 518-519.) Good cause may be found when ". . . improper or external influences . . . [are] brought to bear on a juror . . . ." (*Id.* at p. 518; see also *People* v. *Kaurish, supra,* 52 Cal.3d at p. 694.)

Accordingly, we find the court here was required to hold a hearing to determine whether the juror remained competent to serve. The fact that the juror was seen speaking with a police officer who had been a witness in the trial constituted evidence that the juror may have been subject to improper or external influences. Failure to hold such a hearing was an abuse of discretion and constituted error.

In determining the import of the court's error, and whether it requires reversal, we look again to *People* v. *Burgener, supra,* 41 Cal.3d 505. In *Burgener,* the intoxication of various jurors brought to the court's attention by the jury foreman was not explored. No hearing was held. Though the court acknowledged the possibility the juror may have actually been intoxicated and her ability to discharge her duties may thus have been compromised, the court held it was unable to evaluate the claim of juror misconduct, since trial counsel had objected to any inquiry of the juror being made. The court stated that "In any event, the record on appeal sheds no light on the cause of Juror M.'s behavior. And in this case, unlike *McNeal, supra,* this lack of a record is the result of defense counsel's preference that the court conduct no inquiry." (*Id.* at p. 521.) The court went on to say that "In *McNeal,* defense counsel initiated the suggestion that the court conduct a full

hearing pursuant to section 1120. Here, by contrast, the judge suggested such an inquiry but defense counsel expressed concern that questioning Juror M. would 'destroy the jury' and intimated that other jurors might be conspiring to oust her because they did not get along with her. This record, while sparse and ambiguous, would support the inference that defense counsel's choice was tactically motivated; he may have hoped that the continued participation of Juror M. even if intoxicated, might result in a verdict favorable to defendant. Regardless of counsel's motives, however, defendant cannot be permitted to prevent an inquiry into the condition of a possibly intoxicated juror on the basis that such an inquiry would 'destroy the jury' and subsequently challenge the verdict of that very jury on grounds that the court's failure to conduct an inquiry prejudices his interest. . . . [¶] [W]e conclude only that the record on appeal is insufficient to evaluate a claim of juror misconduct." (*Id.* at pp. 521-522.)

The court went on to note that, where the record on appeal is insufficient to evaluate such a claim, a petition for habeas corpus is the appropriate vehicle. (90 Cal.App.3d at p. 522.) While we do not suggest such a claim by defendant in the case at bench would be meritorious, we do find support from *Burgener* for the proposition the record before us is inadequate to support a finding the trial court's error required reversal. Though the record before us does not suggest, as it did in *Burgener*, that counsel for defendant refused further inquiry by the court for *tactical reasons*, it was counsel for defendant who indicated to the court he had spoken to the officer and was satisfied the officer had not spoken about the case. Counsel for codefendant indicated he believed the officer and had no problem. The court thereafter indicated it would find no error and the matter was terminated. While the court here was required to hold a hearing, even though trial counsel was satisfied with the matter, we cannot find on these facts that reversal is required on this ground. Accordingly, we find the trial court's error in not holding a hearing was harmless beyond a reasonable doubt.

B. *Does Potential Juror Misconduct Always Give Rise to a Presumption of Prejudice?*

 A presumption in the law affects the allocation of the burden of production and can also affect the allocation of the burden of persuasion. (See 1 Witkin, Cal. Evidence (3d ed. 1986) §§ 176-179, pp. 150-154.) If some fact be presumed, the opponent of that fact bears the burden of producing or going forward with evidence sufficient to overcome or rebut the presumed fact.

It is not necessary for our purposes to identify whether the presumption of prejudice held to arise in *People v. Ryner, supra,* 164 Cal.App.3d 1075,

affects only the burden of production or both the burdens of production and persuasion. In either case, if no evidence is adduced in contravention of the presumed fact, the trier of fact must accept the existence of the presumed fact. (Evid. Code, §§ 604, 606.) Thus under the facts of the case at bench, if prejudice is presumed then reversal is required, since no evidence was offered to rebut the presumption.

The cases establishing the presumption of prejudice involve actual misconduct, or, phrased in a different way, "true jury misconduct." (*People* v. *Cooper* (1991) 53 Cal.3d 771, 835 [281 Cal.Rptr. 90, 809 P.2d 865], quoting *People* v. *Boyd* (1979) 95 Cal.App.3d 577, 585 [157 Cal.Rptr. 293].) "When a person violates his oath as a juror, doubt is cast on that person's ability to otherwise perform his duties. (Citation.] The presumption of prejudice is appropriate in those situations." (*People* v. *Cooper, supra,* 53 Cal.3d at pp. 835-836.)

Here, the clerk's transcript indicates the jury was sworn to try the cause. Code of Civil Procedure section 232, subdivision (b) sets forth the oath which must be read to and acknowledged by the jury as soon as jury selection is completed. It reads: " 'Do you . . . and each of you understand and agree that you will well and truly try the cause now pending before this court, and a true verdict render according only to the evidence presented to you and to the instructions of the court.' " In order for prejudice to be presumed, it is therefore necessary that there be evidence that this oath was violated, or that the juror's ability to carry out the oath was compromised.

In *People* v. *Pierce, supra,* 24 Cal.3d 199, our Supreme Court held a presumption of prejudice arises when a juror violates section 1122 and discusses a subject connected with the trial. (*Id.* at p. 207, citing *People* v. *Honeycutt* (1977) 20 Cal.3d 150, 156-157 [141 Cal.Rptr. 698, 570 P.2d 1050].) *Pierce* is not controlling, as here there was no discussion which related to any subject connected with the trial.

In *People* v. *Burgener, supra,* 41 Cal.3d 505, the court did not hold the allegation by the jury foreman that another juror was intoxicated gave rise to a presumption of prejudice. Though the court held that a hearing was required, prejudice was not presumed and reversal was not compelled when the hearing failed to occur. We read *Burgener* as not presuming prejudice because the condition precedent to a finding the juror's competency was compromised, namely her intoxication, was not shown. The court emphasized intoxication could render a juror incompetent to serve. (*Id.* at p. 520.) However, only an *allegation* of intoxication had been made. (*Id.* at p. 521.) While this was sufficient to require a hearing, it was obviously not enough to warrant a presumption of prejudice.

In *People* v. *Cobb* (1955) 45 Cal.2d 158 [287 P.2d 752], our Supreme Court held that a conversation between a juror and a relative of one of the defendants did not require a hearing and did not raise a presumption the juror was improperly influenced since the subject of the conversation did not relate to the trial. (*Id.* at p. 161.) And in *People* v. *Federico* (1981) 127 Cal.App.3d 20 [179 Cal.Rptr. 315], the court cited *Cobb* for the proposition that ". . . when the alleged misconduct involves an unauthorized communication with or by a juror, the presumption [of prejudice] does not arise unless there is a showing that the content of the communication was about the matter pending before the jury, i.e., the guilt or innocence of the defendant. [Citations.]" (*Id.* at p. 38.)

Though *Cobb* has never been overruled, we do not believe it survives *People* v. *Burgener, supra,* 41 Cal.3d 505 to the extent it holds a hearing is not required. After *Burgener,* it is clear a hearing is required whenever a court is put on notice that juror misconduct may have occurred.

On the other hand, to the extent *Cobb* holds improper influence, and thus prejudice, is not presumed when the subject matter of a juror's conversation does not involve the pending trial, the case does survive and we are bound to apply this rule of law in the case at bench. (See *Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937].) We are troubled by the fact our colleagues in the First District made no mention of *Cobb* in their decision in *People* v. *Ryner, supra,* 164 Cal.App.3d 1075. To the extent the court in *Ryner* held a presumption of prejudice arises even when the subject matter of the discussion does not involve the pending court action, we believe *Ryner* cannot be reconciled with *Cobb.* To the extent *People* v. *Federico, supra,* 127 Cal.App.3d at page 38 relies upon *Cobb* in holding prejudice is not presumed in such a situation, it represents the law of this state. Accordingly, we hold no presumption of prejudice arose from the police officer/witness's conversation with a juror regarding matters unrelated to the cause being tried. This holding is also in accord with our Supreme Court's decision in *People* v. *Cooper, supra,* 53 Cal.3d 771, which held that only actual or "true" jury misconduct will give rise to a presumption of prejudice. Here, the conduct of the juror did not, on its face, violate the juror's oath, nor did it evidence that the juror's ability to follow the oath had been compromised. Reversal is therefore not compelled by the failure to proffer evidence negating prejudice.

## IV

THE TRIAL COURT ERRED IN NOT STATING ANY REASONS FOR THE
DENIAL OF PROBATION*

. . . . . . . . . . . . . . . . . . . . . . . . . . . .

## CONCLUSION

We reverse defendant's sentence and remand to the trial court with directions to state reasons for the denial of probation and imposition of a prison term, should the court make that same sentencing choice. In all other respects the judgment is affirmed.

Sills, P. J., and Sonenshine, J., concurred.

---

*See footnote, *ante,* page 1471.