Filed 5/13/13  P. v. Solorio CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>SALVADOR SOLORIO et al.,<br><br>  Defendants and Appellants. | 2d Crim. No. B233913<br>(Super. Ct. No. F449063)<br>(San Luis Obispo County) |

Salvador Solorio and Frank Jamesricky Sanchez appeal the judgment following their convictions for assault with a semiautomatic firearm.  (Pen. Code, § 245, subd. (b).)[1]  Sanchez was also convicted for negligent discharge of a firearm.  (§ 246.3, subd. (a).)  The jury found to be true allegations that the assault was committed by Solorio and Sanchez for the benefit of a criminal street gang, and that Sanchez personally used a firearm in the assault.[2]  (§ 186.22, subd. (b).)  Sanchez was sentenced to 13 years in prison consisting of three years for the assault, plus 10 years for committing a violent felony for the benefit of his gang.  (§ 186.22, subd. (b)(1)(C).)  His sentence for negligently discharging a firearm was stayed.  Solorio was sentenced to eight years

---

[1] All statutory references are to the Penal Code.
[2] The jury also found the gang enhancement to be true as to the negligent discharge of a firearm offense committed by Sanchez.

consisting of three years for the assault, plus a five-year gang enhancement. (§ 186.22, subd. (b)(1)(B).)

Solorio and Sanchez contend that there was insufficient evidence to support the gang enhancement, ineffective assistance of counsel, juror misconduct, and sentencing error. Solorio also contends that there was insufficient evidence that he aided and abetted Sanchez in the assault with a semiautomatic firearm. We affirm.

FACTS AND PROCEDURAL HISTORY

Isaac Abarca was associated with a gang known as Mexican Pride. Solorio and Sanchez were members of a rival gang known as Paso Robles 13. Abarca had participated in previous gang-related fights with Solorio. Abarca and Solorio also had a personal connection. Abarca had fathered two children with Sarah K., a woman who was romantically involved with Solorio at the time of the charged offenses.

On July 10, 2010, Abarca was having a birthday party for his five-year-old son in the front yard of his residence. The mother of the son was the woman then in a relationship with Solorio. Solorio and Sanchez drove by in a Chevy Blazer. Sanchez was driving and Solorio was a passenger. Seeing Solorio in the car, Abarca threw a can of beer at the car. The beer can hit a tree, not the car. Abarca then hopped the fence and ran towards the car seeking to fight with Solorio. Solorio got out of the passenger side of the Blazer holding a knife. Sanchez got out of the driver's side holding a semiautomatic firearm. Abarca stopped when Sanchez pointed the firearm at him. There was some yelling. Abarca's father tried to pull Abarca away, and told Sanchez not to shoot his son.

Sanchez and Solorio appeared to be getting back into their car when Solorio told Sanchez, "Shoot him, shoot him." Sanchez turned and fired a shot which hit the ground in front of the feet of Abarca's father. The impact from bullet fragments or debris on the ground caused minor injuries to the father's leg.

After the shot, Abarca ran towards the car and hit its back window as it started to drive away. A friend of Abarca reached the car as Solorio and Sanchez drove off. A witness saw the car and a portion of the confrontation. She heard yelling and gesturing. She saw Sanchez fire a shot at the men standing in the road.

2

In his initial interview with the police, Abarca's father recited the facts as set forth above but did not state that he heard Solorio say, "shoot him, shoot him" to Sanchez. In another police interview the following day, Abarca's father told police that he heard Solorio repeatedly tell Sanchez to shoot him. Abarca claimed the shooting occurred because of the people he and Solorio associated with in the past, namely, the Mexican Pride and Paso Robles 13 gangs.

## DISCUSSION

### *Substantial Evidence Supports Solorio Conviction*

Solorio contends there was insufficient evidence to support his conviction as an aider and abettor of Sanchez because he was unaware of Sanchez's criminal purpose and did not aid, encourage, or facilitate commission of the offense. We disagree.

In evaluating a sufficiency of the evidence claim, we examine the entire record and draw all reasonable inferences from the record in favor of the judgment to determine whether there is reasonable and credible evidence from which a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (*People v. Streeter* (2012) 54 Cal.4th 205, 241.) We do not reweigh the evidence or assess the credibility of witnesses. (*People v. Albillar* (2010) 51 Cal.4th 47, 60.)

The elements of assault with a semiautomatic firearm are that the person (1) used such a firearm in a manner that by its nature would directly and probably result in the application of force to someone, (2) acted willfully, (3) was aware of facts that would lead a reasonable person to realize the act by its nature would directly and probably result in application of force to someone, and (4) had the ability to apply force with the firearm. (See *People v. Golde* (2008) 163 Cal.App.4th 101, 121; CALCRIM No. 875.) A person aids and abets an offense if he or she aids, encourages or facilitates the commission of the offense, with knowledge of the criminal purpose of the direct perpetrator, and with the intent to aid, encourage or facilitate the offense. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1118; see also *People v. Houston* (2012) 54 Cal.4th 1186, 1224.)

We conclude that substantial evidence supports Solorio's conviction. Solorio and Sanchez were members of the same gang. They drove together to a party

3

being given by a member of a rival gang. Solorio was armed with a knife and Sanchez was armed with a semiautomatic firearm. They stopped in front of the Abarca residence, both got out of their car, and both participated in a threatening verbal altercation with Abarca and others. While outside their car, both held their respective weapons. During the altercation, Solorio encouraged Sanchez to shoot Abarca, stating "shoot him, shoot him."

Solorio argues that mere presence at the crime scene and membership in the same gang standing alone are insufficient to establish aiding and abetting. We do not dispute this assertion, but gang affiliation, companionship, and conduct before and after the offense are relevant factors in determining aider and abettor liability. (See *Calderon v. Superior Court* (2001) 87 Cal.App.4th 933, 940–941; *Mitchell v. Prunty* (9th Cir. 1997) 107 F.3d 1337, 1342, overruled on other grounds in *Santamaria v. Horsley* (9th Cir. 1998) 133 F.3d 1242.) Moreover, the evidence in this case extended far beyond mere presence and common gang membership. The evidence shows Solorio was not a passive bystander but rather drove to the party with Sanchez with weapons and with the intent to engage in a fight with Abarca.

*Gang Enhancement Alleged Against Solorio*

Solorio contends that the prosecution's failure to allege the gang enhancement in an amended information filed after the evidentiary phase of the trial prevents a true finding on the enhancement against him. We disagree.

Section 952 requires an accusatory pleading to include express allegations of all offenses charged and enhancements alleged. (§ 1170.1, subd. (e).) The purpose of this requirement is to provide the accused with reasonable notice of all charges against him. (*People v. Sandoval* (2006) 140 Cal.App.4th 111, 132.) Any defect in the form of an accusatory pleading, however, does not require reversal unless it prejudices a substantial right of the defendant on the merits. (*Ibid.*) Also, under modern pleading procedures, notice of the circumstances of an alleged crime is provided more by evidence at a preliminary hearing than the contents of the pleading. (*People v. Jennings* (1991) 53

4

Cal.3d 334, 358.)  In any event, the record shows that the amended information alleged the gang enhancement against both defendants.

The original September 2010 information included an allegation against both Solorio and Sanchez that the use of a semiautomatic gun offense was committed for the benefit of a criminal street gang.  The September 2010 information was the operative accusatory pleading until after completion of the evidentiary phase of trial.  On or about November 22, 2010, the court questioned whether the correct firearm enhancement was alleged in the information.  In response, the prosecution prepared an amended information which changed the firearm enhancement but also deleted Solorio from the gang enhancement.  The proposed amended information, dated November 23, 2010, was stamped as "received" by the trial court.  Based on the record, this proposed amended information was not filed with the court.  Instead, the prosecution prepared another version of the amended information which was stamped as "filed" by the trial court on November 29, 2010.  The amended information filed with the court included an allegation of the gang enhancement against both Solorio and Sanchez.

Accordingly, Solorio has not shown that any operative version of the information omitted the gang enhancement against him.  The appellant has the burden to provide an adequate record on appeal to allow the reviewing court to assess any purported error.  (*Haywood v. Superior Court* (2000) 77 Cal.App.4th 949, 955; *People v. Neilson* (2007) 154 Cal.App.4th 1529, 1534.)

*Substantial Evidence Supports Gang Enhancement*

Solorio and Sanchez contend there was insufficient evidence to support the gang enhancement.  They argue that the offenses were committed for a personal reason and that the only evidence of a gang-related motive was the testimony of the prosecution gang expert.  Applying the usual substantial evidence standard set forth in this opinion, we conclude that substantial evidence supports the enhancement against both Solorio and Sanchez.  (*People v. Albillar, supra,* 51 Cal.4th at pp. 59-60.)

A gang enhancement requires proof of the existence of a criminal street gang and that the offense was "committed for the benefit of, at the direction of, or in

5

association with any criminal street gang, with the specific intent to promote, further, or assist in any criminal conduct by gang members . . . ." (§ 186.22, subd. (b)(4).) Expert testimony is admissible to prove these elements, including the motivation for a crime, and whether it was committed to benefit or promote a gang. (*People v. Albillar, supra*, 51 Cal.4th at p. 63; *People v. Garcia* (2007) 153 Cal.App.4th 1499, 1512.)

Here, the prosecution presented expert testimony from sheriff's deputy Michael Hoier. Deputy Hoier testified that Solorio and Sanchez were members of the Paso Robles 13 gang whose criminal activities included assaults with deadly weapons and other crimes likely to cause great bodily injury. He testified that Abarca's Mexican Pride gang was a rival of Paso Robles 13. He testified to various predicate offenses by the gang, including offenses involving confrontations between Solorio and Abarca.

Deputy Hoier testified that respect was of critical importance to gang members, and that a gang member will confront anyone who shows him disrespect. A gang member who avoids confrontation or fails to confront disrespect loses status in the gang. An enemy of one gang member will become the enemy of the entire gang and gang members are expected to stand up for each other.

In response to a hypothetical question using the facts of this case, Deputy Hoier opined that the assault with a semiautomatic weapon offense was committed for the benefit of, in association with, and at the direction of a criminal street gang. He testified that a crime committed with a firearm would benefit the gang because of its terrorizing effect on the public, and that a crime committed by multiple gang members is committed in association with and at the direction of the gang because gang members are required to support and assist fellow gang members.

Solorio and Sanchez argue that an expert's testimony alone is insufficient to support the gang enhancement. Although some earlier cases imply such a rule, our Supreme Court has recently concluded that "[e]xpert opinion that particular criminal conduct benefited a gang by enhancing its reputation for viciousness can be sufficient to raise the inference that the conduct was 'committed for the benefit of . . . a[] criminal

6

street gang' . . . ." (*People v. Albillar, supra,* 51 Cal.4th at p. 63; *People v. Vang* (2011) 52 Cal.4th 1038, 1048.)

Here, the jury could reasonably infer from the expert opinion and other evidence that the assault with a semiautomatic firearm was committed for the benefit of, in association with, and/or at the direction of the Paso Robles 13 gang. In addition, inferences from the evidence are sufficient to support a finding that the offenses were committed "with the specific intent to promote, further, or assist in any criminal conduct by gang members." (§ 186.22, subd. (b)(1).) If substantial evidence otherwise establishes that the offense was gang related, the jury reasonably may infer that the defendant had the specific intent to promote, further, or assist criminal conduct by gang members. (See *People v. Albillar, supra*, 51 Cal.4th at pp. 67-68.)

Solorio repeatedly characterizes the offense as being personally motivated. He asserts that the confrontation was initiated by Abarca who was jealous that Solorio was in a relationship with the mother of his children. This argument has no merit, even assuming that Abarca initiated the confrontation. First, Abarca's jealousy does not support the inference that Solorio was similarly jealous. Second, even if the evidence could reasonably have been interpreted by the jury as Solorio suggests, the existence of some evidence which would support a contrary finding is not a basis for reversal. (*People v. Letner and Tobin* (2010) 50 Cal.4th 99, 162.)

*No Ineffective Assistance of Counsel*

Solorio and Sanchez contend that they received ineffective assistance of counsel when counsel failed to object to the prosecutor's statement during argument that he believed Solorio and Sanchez were guilty. We disagree.

A prosecutor may not express a personal opinion or belief in the guilt of the accused when there is a substantial danger that the jury will view the comments as based on information other than evidence at trial, or when the comments will induce the jury to trust the prosecutor's judgment rather than its own view of the evidence. (*United States v. Young* (1985) 470 U.S. 1, 18–19; *People v. Lopez* (2008) 42 Cal.4th 960, 971.) It is not misconduct for a prosecutor to express a belief in a defendant's guilt based on the

7

evidence.  (*People v. Mayfield* (1997) 14 Cal.4th 668, 782.)  The propriety of an assertion of personal belief depends on the context and perspective of the assertion.  (*Ibid.*)  Most importantly, a prosecutor may not suggest that his or her personal belief is based in whole or in part on information that has not been disclosed at trial.  (*People v. Frye* (1998) 18 Cal.4th 894, 975, overruled on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421.)  "The danger that the jury will view the prosecutor's expressed belief in the defendant's guilt as being based on outside sources 'is acute when the prosecutor offers his opinion and does not explicitly state that it is based solely on inferences from the evidence at trial.'  [Citation.]  Nevertheless, not all such comments are improper.  Rather, '[t]he prosecutor's comments must . . . be evaluated in the context in which they were made, to ascertain if there was a substantial risk that the jury would consider the remarks to be based on information extraneous to the evidence presented at trial.'  [Citations.]"  (*Lopez,* at p. 971.)

Our examination of the record persuades us that the prosecutor's comment was not misconduct in this case.  Nothing in the prosecutor's articulation of belief in defendants' guilt suggested it was based in any part on facts which were not presented to the jury as evidence.  The prosecutor argued the evidence at length and a reasonable juror would not have construed any of her remarks as suggesting the existence of incriminating information which was not presented at trial.  (*People v. Lopez, supra,* 42 Cal.4th at p. 971.)  Because there was no misconduct, there was no ineffective assistance of counsel.

*No Prejudicial Juror Misconduct*

Solorio and Sanchez contend the trial court erred in denying a motion for new trial based on juror misconduct.  They argue that some jurors discussed the case prior to deliberations and outside the presence of other jurors and some jurors discussed punishment.  We conclude there was no abuse of discretion in denying the motion.

The court conducted an extended hearing on the motion for new trial.  Nonjuror Carrie Watkins, a friend of appellant Sanchez, testified that she and Sanchez's mother had lunch one day during trial and saw three jurors in the same restaurant.  She knew they were jurors because she had attended portions of the trial.  Watkins testified

8

that she heard the three jurors discussing the case and that one juror stated, "Of course he's guilty; he shot the gun." Sanchez's mother, Eva Sanchez, corroborated Watkins by testifying that she heard one juror state the name "Frank" (Sanchez) and another say, "He shot the gun."

Two jurors testified to the contrary. Juror C.A. testified that he was at the lunch in question but neither he nor other jurors discussed the case. He specifically testified that he heard no juror refer to anyone as "Frank" or refer to who shot the gun. Juror F.C. testified that he ate at the subject restaurant several times, saw members of the Sanchez family there, but never discussed the case at lunch or heard any other juror discuss the case.

There was also testimony regarding a discussion of the three strikes law. Juror L.F. testified that, during deliberations, he mentioned the three strikes law and Juror D.F., a corrections officer, explained what it was. L.F. stated that the discussion lasted no more than 30 seconds. Juror F.C. testified that he remembered a discussion about the three strikes law during deliberations and stated that one juror brought the three strikes law up and another explained it. He stated that the jury as a whole thought it was irrelevant and the matter "didn't get much play." The discussion lasted approximately one minute. Juror J.H. recalled a discussion about the three strikes law during deliberations that lasted one or two minutes.

The trial court denied the new trial motion concluding that there was an insufficient showing of prejudicial misconduct by the jury. The court stated that it was inappropriate for the jury to discuss the three strikes law but not prejudicial misconduct because the discussion was general and the jury considered the law to be irrelevant. As to the restaurant discussion, the trial court questioned the credibility of witnesses Carrie Watkins and Eva Sanchez, and noted that no juror admitted having any discussions about the case in the restaurant or otherwise prior to deliberations.

A defendant is entitled to trial by an impartial jury which has not been improperly influenced and which decides the case solely on the evidence. (*People v. Harris* (2008) 43 Cal.4th 1269, 1303; *In re Hamilton* (1999) 20 Cal.4th 273, 294.) Juror

9

misconduct occurs when there is a direct violation of the oaths, duties, or admonitions imposed on jurors, such as when a juror conceals bias on voir dire, consciously receives outside information about the case, discusses the case with nonjurors, or shares improper information with other jurors. (*Hamilton*, at p. 294.)

When a juror engages in misconduct, prejudice is presumed and must be rebutted by the prosecution to avoid the granting of a new trial. (*In re Carpenter* (1995) 9 Cal.4th 634, 651, 654; *People v. Chavez* (1991) 231 Cal.App.3d 1471, 1483-1485.) There is prejudice when the jury's impartiality has been adversely affected, the prosecution's burden of proof lightened, or any defense contradicted. (*People v. Zapien* (1993) 4 Cal.4th 929, 994.)

The applicable standard is whether there is a substantial likelihood that any of the jurors were actually biased. A verdict will not be disturbed when the surrounding circumstances indicate no reasonable probability of prejudice, that is, no substantial likelihood a juror was actually biased against the defendant by misconduct undermining the juror's impartiality. (*People v. Foster* (2010) 50 Cal.4th 1301, 1342.)

We defer to credibility determinations by the trial court and its factual findings if supported by substantial evidence, but exercise our independent judgment as to whether the presumption of prejudice has been rebutted. (*People v. Ramos* (2004) 34 Cal.4th 494, 520.) Any presumption of prejudice is rebutted "if the entire record . . . , including the nature of the misconduct or other event, and the surrounding circumstances, indicates there is no reasonable probability of prejudice, i.e., no *substantial likelihood* that one or more jurors were actually biased against the defendant." (*In re Hamilton, supra,* 20 Cal.4th at p. 296.) "The standard is a pragmatic one, mindful of the 'day-to-day realities of courtroom life' [citation] and of society's strong competing interest in the stability of criminal verdicts [citations]. It is 'virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote.' [Citation.] . . . '. . . [Jurors] are imbued with human frailties as well as virtues. If the system is to function at all, we must tolerate a certain amount of imperfection short of actual bias.'" (*Ibid.)*

10

Based on the record as a whole, we conclude that the presumption of prejudice was rebutted and the trial court did not abuse its discretion in denying the new trial motion.

*No Error in Sanchez Sentencing*

Sanchez was sentenced to three years for assault with a semiautomatic firearm, plus 10 years pursuant to section 186.22, subdivision (b)(1)(C). Section 186.22, subdivision (b) provides for an additional sentence when a felony is committed for the benefit of a gang. The additional sentence is 10 years for a "violent felony" as defined in section 667.5, five years for a serious felony as defined in section 1192.7, and 16 months, two years, or three years for other felonies. (§ 186.22, subd. (b)(1)(A)-(C).) Sanchez contends he was not convicted of a "violent felony" and, therefore, the 10-year sentence was improperly imposed and must be stricken or reduced. We disagree. Despite a pleading error, the jury finding that Sanchez personally used a firearm supports the 10-year additional sentence.

The original information alleged that Sanchez "personally used a firearm" in committing assault with a semiautomatic firearm "within the meaning of Penal Code Section 12022.5(a)," which caused the felony to become a serious felony as set forth in section 1192.7, subdivision (c)(8) and a violent felony as set forth in section 667.5, subdivision (c)(8). Had there been no amendment to the information, the 10-year sentence for a "violent felony" under section 186.22, subdivision (b)(1)(C) would have been indisputable. Section 667.5, subdivision (c)(8) includes as violent felonies "any felony in which the defendant uses a firearm which use has been charged and proved as provided in subdivision (a) of . . . Section 12022.5." Section 12022.5 broadly covers felonies in which the defendant personally uses a firearm and expressly covers assault with a semiautomatic weapon. (§ 12022.5, subds. (a), (d).)

After completion of the evidentiary phase of trial, however, the information was amended to delete the reference to section 12022.5 and substitute a reference to section 12022.53. The amended allegation was that Sanchez personally used a firearm in the commission of the offense "within the meaning of Penal Code Section 12022.53(c)."

11

Although a violation of section 12022.53 is a violent felony, commission of an assault with a semiautomatic firearm did not violate section 12022.53. Section 12022.53 covers only enumerated crimes and assault with a semiautomatic firearm is not one of them. Therefore, section 12022.53, subdivision (c) does not apply and does not cause the offense to "become" a violent felony under section 667.5.

The trial court acknowledged the problem at the time of sentencing. The court stated that section 12022.53, subdivision (c) was not applicable to an assault with a semiautomatic firearm, but that "it appears the jury's intention with the finding was that the defendant personally used the firearm. Therefore, the sentence imposed is based on that premise." We conclude that the trial court properly sentenced Sanchez. The task of the jury was to determine whether Sanchez personally used a firearm, not the applicability of a statute relevant solely to sentencing. The personal use factual finding is unassailable and, standing alone, a sufficient finding to support the enhancement imposed by the trial court.

Due process requires a defendant to be given fair notice of the charges against him, including enhancements so that he or she has an opportunity to prepare a defense and to avoid unfair surprise at trial. (*People v. Tardy* (2003) 112 Cal.App.4th 783, 786; *People v. Neal* (1984) 159 Cal.App.3d 69, 73.) Here, Sanchez was fully informed that he had to defend against an allegation that he personally used a firearm in the commission of the offense, that a sentence enhancement based on section 186.22, subdivision (b)(1) was being sought, and that the term of the enhancement would turn on whether the offense was a serious and/or violent felony.[3] In fact, the version of the information in effect through the completion of the evidentiary phase of the trial was accurate and complete in all respects. "[W]here the information puts the defendant on notice that a sentence enhancement will be sought, and further notifies him of the facts

_____

[3] During oral argument, Sanchez cited the case of *People v. Mancebo* (2002) 27 Cal.4th 735 as pertinent to the sufficiency of the allegations in the information. *Mancebo* is not helpful to Sanchez. *Mancebo* states that an accusatory pleading must allege the existence of facts material to the imposition of an enhanced sentence under the one strike law. (*Id.* at pp. 743-744.) As we have stated, the accusatory pleading in the instant case alleges that Sanchez personally used a firearm.

12

supporting the alleged enhancement, modification of the judgment for a misstatement of the underlying enhancement statute is required only where the defendant has been misled to his prejudice." (*Neal, supra,* at p. 73; see also *People v. Dixon* (2007) 153 Cal.App.4th 985, 1001–1002.)

*Error in Computation of Solorio Conduct Credit*

Solorio contends the trial court erred in its calculation of conduct credits under section 4019, respondent concedes, and we agree. Based on the version of section 4019 in effect, Solorio was entitled to one day of credit for every two days of local custody. That computation results in a total of 160 days of conduct credit. The trial court awarded Solorio 158 days of conduct credit instead of the required 160 days. Therefore, the judgment against Solorio must be modified to reflect 160 days.

We order the trial court to amend the abstract of judgment for Solorio to reflect 160 days of presentence conduct credit. The judgments are otherwise affirmed.

NOT TO BE PUBLISHED.


PERREN, J.


We concur:


GILBERT, P. J.


YEGAN, J.


13

Teresa Estrada-Mullaney, Judge

Superior Court County of San Luis Obispo

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant Solorio.

Wilson & Wilson and Denton J. Wilson for Defendant and Appellant Sanchez.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Victoria B. Wilson, Supervising Deputy Attorney General, Jonathan J. Kline, Brendan Sullivan, Deputy Attorneys General, for Plaintiff and Respondent.