2008-NMCA-073

185 P.3d 368

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**An Xuan NGUYEN, Defendant–Appellant.**

**No. 27,032.**

Court of Appeals of New Mexico.

Feb. 21, 2008.

Certiorari Denied, No. 31,000,
April 21, 2008.

Gary K. King, Attorney General, Santa Fe, NM, Max Shepherd, Assistant Attorney General, Albuquerque, NM, for Appellee.

Christin K. Kennedy, Albuquerque, NM, for Appellant.

## OPINION

PICKARD, Judge.

{1} In this appeal, we consider an issue of first impression: whether using a single interpreter to interpret for both Defendant, who is Vietnamese, and a Vietnamese juror, denied Defendant a fair trial so as to amount to fundamental or structural error. We also consider Defendant's claim that he was denied effective assistance of counsel. We conclude that, under the facts of this case, Defendant was not denied a fair trial because all testimony was translated for him, the interpreter was available to him at all times, he has not shown any prejudice, and his attorney actually suggested the procedure used. We reject his claim that he was denied effective assistance of counsel because his contentions depend on matters not of record. We affirm.

## BACKGROUND

{2} Defendant was convicted of fourteen felony offenses dealing with criminal sexual penetration and contact of his half-sister, along with two counts of kidnaping. Defendant speaks Vietnamese. His primary contention is that the use of a single interpreter to interpret for him, as well as for a Vietnamese-speaking juror, requires reversal of his convictions.

{3} On the first day of trial, the State reminded the court that one of the jurors spoke Vietnamese. The interpreter told the court that she was the only Vietnamese interpreter who could perform simultaneous interpretation. There were only two Vietnamese interpreters available, and the other interpreter was unable to interpret simultaneously. The interpreter told the court that she would have to translate for Defendant and for the juror and that she was concerned about being able to translate witness testimony and also translate communications between Defendant and his counsel. The equipment available to the interpreter allowed her to interpret for more than one person at a time, but she had to remember to push a mute button when translating any communication between Defendant and counsel so that the juror would not hear. The interpreter said that she could interpret everything for Defendant and for the juror. The interpreter also expressed concern that while the jury was deliberating, she would be unavailable to translate any communication between Defendant and his counsel.

{4} The trial court said it would attempt to get a second interpreter to translate for the juror, even though the other Vietnamese interpreter could not perform simultaneous interpretation. At that point, defense counsel told the court that having a single interpreter would work and that it had worked in a previous trial he had done. He told the court, "It can be done. [The interpreter] just has to mute when [Defendant] and I are speaking but, you know, over the course of a two, maybe three day trial, we might forget once and that may be a problem. I think it can be done." Defense counsel added that his biggest concern was during jury deliberations, but also added, "I think it can be done." Defense counsel said that he would help remind the interpreter to push the mute button when necessary. The court said it would get a second interpreter, but returned after the lunch recess and said it was unable to get the second interpreter. The court then proceeded with one interpreter.

{5} During the testimony of the victim, defense counsel approached the bench and explained that he wanted to ask Defendant a question while the victim was testifying. After some discussion, the attorneys agreed that the prosecutor would speak more slowly, and that if defense counsel and Defendant needed to communicate, counsel would signal the prosecutor. It was understood that a signal to the prosecutor would result in the suspension of testimony so that the interpreter could assist Defendant and defense counsel.

{6} On one other occasion, the defense requested a ten-minute break to have the assistance of the interpreter. Apparently, the interpreter had asked Defendant to make notes of questions he wanted asked. The notes were in Vietnamese and had to be translated by the interpreter. The court granted the request. The record does not

reflect any other requests, by Defendant or by defense counsel, for assistance from the interpreter.

## DISCUSSION

### A. The Use of a Single Interpreter

{7} It is undisputed that a defendant has the right to an interpreter. *See* N.M. Const. art. II, § 14 (granting the right to an accused "to have the charge and testimony interpreted to him in a language that he understands"). An interpreter allows non-English-speaking witnesses to testify; facilitates the understanding of a non-English-speaking defendant about court procedures and any discussions between attorneys, witnesses, and the court; and allows a defendant to confer with his counsel. *See People v. Mata Aguilar*, 35 Cal.3d 785, 200 Cal.Rptr. 908, 677 P.2d 1198, 1201 (1984) (in bank). The issue presented by this case is commonly referred to as "borrowing" the defendant's interpreter, *see, e.g., id.* 200 Cal.Rptr. 908, 677 P.2d at 1200; *People v. Avila*, 797 P.2d 804, 806 (Colo.Ct.App.1990), although we think that "sharing" an interpreter is a more accurate description of what happened.

■ {8} Defendant argues that several distinct constitutional rights were violated by the procedure here. He contends that his rights to due process and to confront witnesses against him were violated, and that his right to effective assistance of counsel was violated because his ability to consult with his attorney was adversely affected. We review his claim that there was structural or fundamental error in not providing a personal interpreter de novo. *See State v. DeGraff*, 2006–NMSC–011, ¶ 6, 139 N.M. 211, 131 P.3d 61 (stating that questions of constitutional law are reviewed de novo). Defendant does not claim that the court below abused its discretion in not providing a personal interpreter under the facts of this case. *See Avila*, 797 P.2d at 806 (utilizing the abuse of discretion standard when an interpreter was "borrowed" to assist a witness); *cf. United Props., Ltd. v. Walgreen Props., Inc.*, 2003–NMCA–140, ¶ 7, 134 N.M. 725, 82 P.3d 535 (drawing the distinction between the threshold issue of whether a court has discretion in a particular situation, which is reviewed de novo, and whether the exercise of that discretion is proper, which is reviewed for abuse).

### 1. Structural or fundamental error

■ {9} Recognizing that he did not object to the procedure below, Defendant argues that the error is structural error automatically requiring reversal. A structural error is a " 'defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself.' " *State ex rel. Children, Youth & Families Dep't v. Brandy S.*, 2007–NMCA–135, ¶ 18, 142 N.M. 705, 168 P.3d 1129 (quoting *Neder v. United States*, 527 U.S. 1, 8, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). Structural error has been found only "in a very limited class of cases." *Id.* ¶ 19 (internal quotation marks and citation omitted). For example, structural error has been found where there is a total deprivation of the right to counsel or when a trial has been conducted before a judge who is not impartial. *Id.*

■ {10} Defendant also asks us to reverse, contending that the error should be reviewed as fundamental error. We find fundamental error when a defendant's "guilt is so doubtful that it would shock the judicial conscience to allow the conviction to stand." *State v. Baca*, 1997–NMSC–045, ¶ 41, 124 N.M. 55, 946 P.2d 1066. Defendant does not argue that this branch of the fundamental error doctrine is satisfied. Instead, he relies on the other branch, arguing that substantial justice is not done when a defendant is deprived of rights essential to his defense. *See State v. Jett*, 111 N.M. 309, 314, 805 P.2d 78, 83 (1991); *State v. Hennessy*, 114 N.M. 283, 287, 837 P.2d 1366, 1370 (Ct.App.1992) (recognizing two branches of fundamental error doctrine), *overruled on other grounds by State v. Lucero*, 116 N.M. 450, 453–54, 863 P.2d 1071, 1074–75 (1993). We hold that there is neither structural nor fundamental error.

■ {11} Defendant relies on California authority holding that "borrowing" an interpreter constitutes reversible error per se. These cases were decided, in part, based on a California state constitutional provision stating that an accused shall have an interpreter

"throughout the proceedings." *See Mata Aguilar*, 200 Cal.Rptr. 908, 677 P.2d at 1202. However, the California Supreme Court later retreated from the rule that borrowing an interpreter is automatically reversible and adopted a harmless-error analysis, thereby requiring a defendant to show prejudice before reversal is warranted. *See People v. Rodriguez*, 42 Cal.3d 1005, 232 Cal.Rptr. 132, 728 P.2d 202, 207–08 (1986) (in bank) (finding no prejudice where there was no "indication of actual interruption of either defendant's communication or comprehension").

{12} Other states that have considered this issue have rejected the argument that borrowing an interpreter is per se reversible error, and they have held that reversal is required only if the defendant can show prejudice. *See Avila*, 797 P.2d at 806 (finding that the defendant was not denied due process where his interpreter was borrowed to translate for one witness and the defendant did not show that he could not communicate with his attorney); *People v. Tomas*, 136 Ill.App.3d 1054, 91 Ill.Dec. 782, 484 N.E.2d 341, 343–44 (1985) (holding that where the shared interpreter was available to translate for the defendants and the testimony could be interrupted for any defendant to be able to do so, the defendants had shown no deprivation of rights and reversal was not required); *State v. Selalla*, 2008 SD 3, ¶¶ 32–35, 744 N.W.2d 802 (holding that the trial court's dismissal of a second interpreter that was interpreting for the defendant and his counsel was not reversible error because the defendant did not show prejudice); *State v. Gonzales–Morales*, 138 Wash.2d 374, 979 P.2d 826, 828, 832 (1999) (en banc) (finding no error where the defendant's interpreter was borrowed to translate for a witness and the court stated that if the defendant wanted to confer with counsel, the proceedings would be interrupted so the interpreter could assist him).

■ {13} With the exception of the earlier California cases that are not current law, we have found no authority holding that using a borrowed or shared interpreter constitutes structural error automatically requiring reversal. Accordingly, we adopt the rule that sharing or borrowing an interpreter does not constitute structural error and that reversal is warranted only on a showing of prejudice.

## 2. Prejudice

■ {14} Here, Defendant has not shown prejudice. The interpreter provided translations of all statements by witnesses, the court, and the attorneys. There is no claim that Defendant could not understand any testimony. *See United States ex rel. Negron v. New York*, 434 F.2d 386, 388 (2d Cir.1970) (reversing conviction where the defendant received only translated summaries of witness testimony and could not consult with counsel). Defendant could stop the trial at any point to have the interpreter translate any discussions he wanted to have with counsel or vice versa. In fact, Defendant availed himself of this procedure before counsel cross-examined the victim. Defendant at no other time sought to use the interpreter to facilitate communications with his attorney when the interpreter was otherwise occupied.

{15} Defendant claims that the interpreter was unavailable to translate for him while the jury was deliberating. Normally, there is little reason why a defendant would need to consult with counsel while the jury is deliberating, but we accept that a defendant might desire a discussion with counsel during jury deliberations. However, even accepting that possibility, we reject Defendant's claim because it is not supported by the facts. It is true that the interpreter was working in the jury room, but it is not true that the interpreter was unavailable. The record establishes that if Defendant wanted to speak with counsel, his needs would have been accommodated. Defendant, however, never made a request for an interpreter during jury deliberations and, for all we know, it may have been possible to get the second interpreter at that point.

{16} On this record, Defendant had every opportunity to consult with counsel with the help of an interpreter. Consequently, we conclude that neither error nor prejudice has been shown. *See United States v. Joshi*, 896 F.2d 1303, 1311 n. 8 (11th Cir.1990) (stating that the defendant's Sixth Amendment rights would not be violated if the court permitted recesses when requested so that the defen-

dant could confer with counsel aided by an interpreter); *Martinez Chavez v. State*, 534 N.E.2d 731, 737 (Ind.1989) (finding no error where the defendant's interpreter was borrowed for one witness and the defendant did not communicate with his attorney during that time), *limited on other grounds by Roark v. State*, 644 N.E.2d 565, 569–70 (Ind. 1994); *Selalla*, 2008 SD 3, ¶¶ 34–35, 744 N.W.2d 802 (finding no prejudice where the court agreed to stop the proceedings at any time so that the defendant could confer with counsel with the help of the interpreter); *Gonzales–Morales*, 979 P.2d at 828, 832 (finding no prejudice where the defendant never availed himself of the opportunity to interrupt the proceedings).

{17} In this connection, one pre-*Rodriguez* case reached a conclusion that reversal was automatically required because even if a provision was made for interrupting the trial, a defendant's right to consult with counsel was hampered. *See People v. Carreon*, 151 Cal. App.3d 559, 198 Cal.Rptr. 843, 846, 851, 853 (1984), *implied overruling recognized by People v. Chavez*, 231 Cal.App.3d 1471, 283 Cal.Rptr. 71, 75 (1991). *Carreon* held that an arrangement allowing counsel or the defendant to obtain translation of attorney-client discussions by signaling their desire to do so was inadequate because it would "significantly inhibit attorney-client communication." *Id.* at 850. *Carreon* reasons that requiring an interruption in the trial carried the potential of alienating the jury, would impermissibly depend on how assertive the defendant was, and would make the act of consultation a tactical or strategic call. *See id.* As we have discussed, *Carreon* no longer appears to be good law after *Rodriguez.* Moreover, we disagree with *Carreon's* reasoning. In our view, it is speculative to say that a defendant's ability to consult with his attorney is unconstitutionally hampered by requiring a defendant or counsel to indicate a desire to communicate.

{18} Because we conclude that Defendant has shown no prejudice, we do not find fundamental error. *See State v. Singleton*, 2001–NMCA–054, ¶ 19, 130 N.M. 583, 28 P.3d 1124 (finding no fundamental error where the defendant did not show prejudice).

### 3. Guidelines for interpreters

{19} In support of his argument that his interpreter could not be borrowed, Defendant relies on the guidelines adopted by the Administrative Office of the Courts (AOC guidelines). The relevant guideline states that "a court interpreter ordinarily may not provide interpretation services for both a litigant and a [non-English-speaking] juror." Our Supreme Court has held that some of the AOC guidelines requiring an oath by the interpreter, and instructions to jurors, are mandatory, *see State v. Pacheco*, 2007–NMSC–009, ¶¶ 29–35, 141 N.M. 340, 155 P.3d 745, but we do not equate the guideline at issue here with an absolute rule. The language of the guideline is not mandatory. The term "ordinarily" means "usually." *See Webster's Third New Int'l Dictionary* 1589 (1966). Consequently, the guideline expresses a preference for a separate interpreter for a litigant and a juror, but does not absolutely require it.

{20} The language of the guideline recognizes that in some situations it may be necessary to have the interpreter do exactly what was done in this case. Allowing flexibility enables a court to deal with situations, like this one, in which the non-English language is relatively uncommon and certified interpreters may not be in abundance. The lack of interpreters in some languages may exist in less-populated areas of the state, as well. Interpreting the guideline as allowing for flexibility, as opposed to interpreting it as mandatory, is consistent with its plain language, allows for a pragmatic approach, and recognizes the reality that interpreters can be in short supply.

{21} Additionally, if we were to hold that an interpreter may never be shared, our holding could adversely impact a non-English-speaking juror's constitutional right to serve. *See* N.M. Const. art. VII, § 3 (stating that "[t]he right of any citizen of the state to ... sit upon juries, shall never be restricted, abridged or impaired on account of ... inability to speak, read or write the English or Spanish languages"); *Singleton*, 2001–NMCA–054, ¶ 9, 130 N.M. 583, 28 P.3d 1124. For example, if, as here, there is a Vietnam-

ese-speaking defendant and juror, the Vietnamese-speaking juror might have to be dismissed from service if a second, qualified Vietnamese interpreter were not available. The procedure adopted by the court was a pragmatic and flexible approach to the simple fact that there was only one Vietnamese interpreter in the district that could perform simultaneous interpretation. We hold that the court's approach was not prohibited by the relevant guideline.

### 4. Preservation and invited error

{22} Although we have held that the facts of this case do not amount to structural or fundamental error, we also point out that the principles of preservation and the doctrine of invited error provide additional rationale for rejecting Defendant's claim of error. As we have discussed, defense counsel lodged no objection to using a single interpreter, but rather affirmatively encouraged the court to do so. Having encouraged the court to proceed with one interpreter, Defendant is in no position to claim error. *See State v. Handa*, 120 N.M. 38, 45–46, 897 P.2d 225, 232–33 (Ct.App.1995) (stating that a defendant may not invite error and later complain about it and that the doctrine of fundamental error has no application when the defendant has invited the error); *State v. Padilla*, 104 N.M. 446, 450–51, 722 P.2d 697, 701–02 (Ct.App. 1986) (stating that when a defendant invites error, he may not later rely on it). We reject the idea that a defendant may raise no objection to, and even encourage, a procedure designed to share an interpreter and then after he is convicted claim that the procedure requires reversal. Allowing a defendant to benefit from that kind of conduct could encourage sandbagging and gamesmanship. *See State v. Arellano*, 1998–NMSC–026, ¶¶ 18–19, 125 N.M. 709, 965 P.2d 293 (expressing disdain for gamesmanship where defense counsel did not alert the court to the fact that the jury had not been sworn and waited for the verdict before objecting).

{23} There is no indication on this record that defense counsel had any such intent, but we believe the better rule requires a defendant to lodge specific objections at trial. *See United States v. Arthurs*, 73 F.3d 444, 447

(1st Cir.1996) (noting that if the defendant had made an objection regarding the services of the interpreter, the court could have taken steps to address any problem). This requirement provides the court with an opportunity to deal with problems and ensures that prejudice can be specifically identified on the record. *See Diversey Corp. v. Chem–Source Corp.*, 1998–NMCA–112, ¶ 38, 125 N.M. 748, 965 P.2d 332 (stating that preservation serves the purposes of allowing the trial court an opportunity to correct any errors, thereby avoiding the need for appeal and creating a record from which the appellate court can make informed decisions). If a defendant feels that sharing an interpreter is hampering his ability to communicate with counsel, then the defendant must specifically point out problems in the trial court.

### 5. Waiver

{24} Recognizing that defense counsel agreed to have one interpreter, Defendant claims that his right to an interpreter cannot be waived by counsel. He argues that his right to an interpreter could only be waived by him after he was advised of his rights on the record. Certainly, "[s]ome rights are considered so personal to the defendant they necessitate inquiry into the individual defendant's decision-making process." *Singleton*, 2001–NMCA–054, ¶ 12, 130 N.M. 583, 28 P.3d 1124. "These rights, such as the right to counsel, require an on-the-record waiver from the defendant personally." *Id.* Other rights that are considered so personal that they can only be waived by the defendant are the right to go to trial and the right to plead guilty. *Id.* However, "[o]ther rights generally pertaining to the conduct of trial may be waived through counsel and without an inquiry on the record into the validity of the waiver." *Id.* Defense attorneys make a wide variety of tactical decisions during the course of a criminal trial, and many of these decisions implicate the constitutional rights of a defendant. *See id.* ¶¶ 12–16. A personal waiver by the defendant is not required for all of these decisions. *See id.* ¶ 12.

{25} We conclude that a personal, on-the-record waiver by Defendant was not required here. Our holding is based on the

facts before us. If counsel had completely waived Defendant's right to an interpreter, then we assume, but do not decide, that the right may not be waived by counsel. There is a statute that appears to support that view. *See* NMSA 1978, § 38–10–6 (1985). However, as we have discussed, the complete absence of an interpreter is not the issue before us. The issue is whether using one interpreter to cover translations for the juror and for Defendant affected a right so personal to Defendant that it could only be waived by Defendant himself. We conclude that it does not. We conclude that it falls within the realm of decisions by counsel that implicate constitutional rights, but that nonetheless can be waived by counsel, at least in the absence of any arguable showing of prejudice. *See Rodriguez*, 232 Cal.Rptr. 132, 728 P.2d at 207.

{26} We hold that, on this record, Defendant was not denied his right to an interpreter and has not shown prejudice requiring reversal.

## B. Ineffective Assistance of Counsel

{27} Defendant argues that defense counsel was ineffective for agreeing to use a single interpreter, for failing to call an expert witness, and for failing to call a potential alibi witness.

{28} To prevail on a claim of ineffective assistance of counsel, the defendant must show that counsel's performance fell below that of a reasonably competent attorney, and that defendant was prejudiced by the deficient performance. *State v. Hester*, 1999–NMSC–020, ¶ 9, 127 N.M. 218, 979 P.2d 729. The burden of proof is on the defendant to prove both prongs. *Id.*

{29} Defendant argues that counsel should have objected to having a single interpreter, but instead "simply acquiesced to the trial court's borrowing of [his] interpreter ..., even when doing so prevented him from communicating with his client when necessary." However, as we have discussed, Defendant's factual premise is incorrect. Defendant was allowed to have the interpreter to help him confer with his attorney any time he indicated a desire to do so. There is no indication that he was prevented from doing so, and the record shows that he did do so. Therefore, counsel's refusal to object to using a single interpreter did not adversely impact any rights of Defendant, nor did it result in any prejudice. Without a showing of prejudice, Defendant's claim fails. *See Duncan v. Kerby*, 115 N.M. 344, 348–49, 851 P.2d 466, 470–71 (1993) (stating that prejudice must be shown before a defendant is entitled to relief based on ineffective assistance of counsel).

{30} Defendant argues that counsel should have called Dr. Westfried, a psychologist, to rebut the testimony of Dr. Samaras, the expert witness called by the State. The record indicates that Defendant had contemplated calling Westfried, but ultimately he was not called. Defendant argues that the failure to call Westfried constituted ineffective assistance of counsel because Defendant did not have an expert to testify on his behalf. We reject Defendant's claim. We have no information about the nature of Westfried's testimony, and we cannot assume it would have been helpful. *See State v. Roybal*, 2002–NMSC–027, ¶ 19, 132 N.M. 657, 54 P.3d 61 (stating that when an ineffective assistance claim is first raised on direct appeal, we evaluate the facts that are part of the record, and if the facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition). It is for defense counsel to assess whether a particular expert's testimony will be helpful, and without a record of the substance of Westfried's testimony, we will not second guess counsel's decision. *See Lytle v. Jordan*, 2001–NMSC–016, ¶ 43, 130 N.M. 198, 22 P.3d 666 (stating that on appeal, we will not second guess the trial strategy and tactics of the defense counsel).

{31} Finally, Defendant argues that defense counsel "had knowledge of a potential alibi witness" who was never listed as a witness or subpoenaed. However, Defendant has provided us with no information about this purported witness and no detail establishing that the witness would have provided an alibi. This case stands in marked contrast to *Duncan*, in which the compelling nature of Defendant's alibi defense was established on the record during a habeas cor-

pus proceeding. *See Duncan,* 115 N.M. at 348, 851 P.2d at 470. Here, however, there is no record of the witness's testimony, and we cannot assume the testimony would have been helpful. Additionally, there has been no showing that, if the witness would have been called, the outcome may have been different.

## CONCLUSION

{32} The use of a single interpreter did not deny Defendant a fair trial, and his ineffective assistance claim is without merit. His convictions are affirmed.

{33} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER and MICHAEL E. VIGIL, Judges.