# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  April 26, 2017 

**NO.  34,511**

**STATE OF NEW MEXICO ex rel.**
**CHILDREN, YOUTH AND**
**FAMILIES DEPARTMENT,**

Petitioner-Appellee,

v.

**ROSALIA M.,**

Respondent-Appellant,

**IN THE MATTER OF MONIQUE L.**
**and MICHAEL L.,**

Children.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**Camille Martinez Olguin, District Judge**

Children, Youth & Families Department
Charles E. Neelley, Chief Children's Court Attorney
Santa Fe, NM
Kelly P. O'Neill, Children's Court Attorney
Albuquerque, NM

for Appellee

Law Office of Jane B. Yohalem
Jane B. Yohalem
Santa Fe, NM

for Appellant

The Law Offices of Ramsey & Hoon, LLC
Twila A. Hoon
Mark A. Ramsey
Albuquerque, NM

Guardians Ad Litem

**OPINION**

**FRENCH, Judge.**

{1}     Rosalia M. (Mother) appeals the district court's order terminating her parental rights to two of her children (Children). She raises two issues on appeal: deprivation of due process and structural error. First, Mother argues that her due process rights were violated when counsel for the Children, Youth and Families Department (CYFD) improperly "coached" witnesses prior to the termination hearing by providing witnesses with a document containing their anticipated testimony and CYFD counsel's opening and closing arguments. Mother argues this left her with no meaningful opportunity to cross-examine the witnesses, and artificially ensured the consistency and credibility of the witnesses. Second, Mother argues the due process violation qualifies as structural error requiring reversal because it affected the reliability of the entire proceeding.

{2}     Based on our review of the record and the district court's response and remedy upon learning of the document provided to the witnesses, we conclude Mother was afforded due process and the proceedings were not rendered fundamentally unfair. We affirm the order terminating Mother's parental rights.

## I.     BACKGROUND

{3}     Mother's parental rights to Children were terminated pursuant to NMSA 1978, Section 32A-4-28(B)(2) (2005) based on a finding of neglect as defined by NMSA 1978, Section 32A-4-2(E)(2). At the termination hearing on October 29, 2014, the attorney for CYFD called witness Kristiana Desiderio, the permanency planning worker from August 2013 to July 2014 for Mother, the father of the children (Father), and Children. Ms. Desiderio's testimony included the reasons Children were in state custody, information about the referrals she made to Mother and Father for assessments and evaluations, details about their supervised visits with Children, and the results of various drug tests. On cross-examination, Father's attorney asked Ms. Desiderio how she prepared for her testimony, given that she was no longer a CYFD employee. Ms. Desiderio said she read an outline prepared by CYFD's attorney, which he emailed to her two days before the hearing.

{4}     Initially, CYFD's attorney objected to questions about the substance of the outline based on attorney-client privilege. Ms. Desiderio was excused from the courtroom while the parents' attorneys made several other objections. Through the course of this discussion, CYFD's attorney explained that the outline Ms. Desiderio received included the information Ms. Desiderio would testify to, the information the other witnesses for CYFD would testify to before Ms. Desiderio took the stand, and

CYFD's opening and closing arguments. Father's attorney argued that to permit Ms. Desiderio to testify as CYFD planned would amount to a violation of Father's due process rights because Father was unable to effectively cross-examine Ms. Desiderio because Ms. Desiderio's testimony was based on the content of the outline rather than her own memory. Mother's attorney objected on the same grounds. Both moved to strike Ms. Desiderio's testimony.

{5}     The district court noted "the tension" between improperly scripting a trial and properly preparing witnesses for trial, and took Ms. Desiderio's copy of the outline under seal. The district court also allowed further cross-examination of Ms. Desiderio. Additionally, CYFD's attorney, Mother's attorney, and Father's attorney questioned Ms. Desiderio about the contents of the outline and which sections of the outline she read as voir dire on the motion to strike her testimony. Ultimately, the district court denied the motion to strike Ms. Desiderio's testimony and terminated the parental rights of Mother and Father. Mother appeals the order terminating parental rights based on a violation of her right to due process, arguing the violation resulted in structural error requiring reversal. Additional facts are provided throughout the discussion as needed.

## II.    DISCUSSION

## A.    Preservation

{6}    CYFD argues that Mother's attorney failed to preserve the due process claim. During the hearing, Mother's attorney only argued that emailing the outline to the department's witnesses violated Rule 11-615 NMRA, which requires the exclusion of witnesses from the courtroom when invoked. Because Mother's argument on appeal is purportedly different than the argument she made during the hearing, CYFD contends she did not properly preserve the argument based on due process grounds.

{7}    We disagree. First, during the termination hearing, Mother's attorney reiterated the due process claim made by Father's attorney, specifically discussing concerns about Ms. Desiderio relying on the outline rather than her own memory. Second, the district court spent nearly three hours during the termination hearing considering the impropriety of the outline and whether it violated the due process rights of the parents. This satisfies the purposes of the preservation rule, which are:

> (1) to specifically alert the district court to a claim of error so that any mistake can be corrected at that time, (2) to allow the opposing party a fair opportunity to respond to the claim of error and to show why the court should rule against that claim, and (3) to create a record sufficient to allow this Court to make an informed decision regarding the contested issue.

*Sandoval v. Baker Hughes Oilfield Operations, Inc.*, 2009-NMCA-095, ¶ 56, 146 N.M. 853, 215 P.3d 791. Given the extensive discussion during the termination

4

hearing, we conclude that the district court was clearly alerted to the due process issue as it applied to both Mother and Father, that CYFD had the opportunity to respond to the claim of error, and that the lengthy discussion of the issue created a record sufficient for review by this Court. We therefore conclude Mother properly preserved her due process claim and proceed to the merits of that claim.

**B.   Due Process**

{8}      On appeal, Mother argues her due process rights were violated. "[W]hether an individual was afforded due process is a question of law that we review de novo." *State ex rel. Children, Youth & Families Dep't v. Mafin M.*, 2003-NMSC-015, ¶ 17, 133 N.M. 827, 70 P.3d 1266.

{9}      Parental rights cannot be terminated without due process of law. *Id.* ¶ 18. In particular, termination proceedings require "scrupulous fairness" to the parent. *State ex rel. Children, Youth & Families Dep't v. Ruth Anne E.*, 1999-NMCA-035, ¶ 19, 126 N.M. 670, 974 P.2d 164 (internal quotation marks and citation omitted). "[D]ue process is a flexible right, the amount of process due at each stage of the proceedings is reflective of the nature of the proceeding and the interests involved[.]" *State ex rel. Children, Youth & Families Dep't v. Maria C.*, 2004-NMCA-083, ¶ 25, 136 N.M. 53, 94 P.3d 796. To evaluate the due process owed to a parent in termination proceedings, we use the balancing test in *Mathews v. Eldridge*, 424 U.S. 319 (1976).

*Mafin M.*, 2003-NMSC-015, ¶ 19. The *Mathews* test requires weighing three factors: the parent's interest; the risk to the parent of an erroneous deprivation through the procedures used in light of the probable value, if any, of additional or substitute procedural safeguards; and the government's interest. *Mathews*, 424 U.S. at 335. The "[p]arents' interest in maintaining a parental relationship with their children is a fundamental right [meriting] strong protection. The government's interest in protecting the welfare of children is equally significant." *In re Pamela A.G.*, 2006-NMSC-019, ¶ 13, 139 N.M. 459, 134 P.3d 746 (alteration, internal quotation marks, and citation omitted). "We thus focus on the second prong and compare the risk to the parent of erroneous deprivation of rights with the potential burden to the state associated with additional procedures." *State ex rel. Children, Youth & Families Dep't v. Steve C.*, 2012-NMCA-045, ¶ 13, 277 P.3d 484. Therefore, whether Mother was afforded due process depends on whether CYFD's method of preparing witnesses increased the risk of an erroneous deprivation of Mother's parental rights, and whether additional procedural safeguards would eliminate or lower that risk. *See Mafin M.*, 2003-NMSC-015, ¶ 25.

{10} Here, the risk of an erroneous deprivation of parental rights was low for several reasons. First, the outline was created from court reports that are part of the record and that were available to Mother's attorney. The district court entered a stipulated

judgment and dispositional order on September 6, 2013, finding that Children were neglected. The order specifically says, "All reports and other documentation concerning the treatment efforts, relating to both the children and the Respondents and any other interested parties, including reports of therapists and evaluators who are providing services connected with the treatment efforts under this order, *shall be made available to* [*CYFD and*] *all attorneys of record and to the Court . . . .*" (Emphasis added). The family treatment plan prepared by Ms. Desiderio is provided in the record proper, and was available during the termination hearing; CYFD's attorney repeatedly stated that he created the outline using Ms. Desiderio's treatment plan and court reports.

{11}     Second, Mother does not argue that the information provided in the outline and taken from Ms. Desiderio's treatment plan and court reports was, in fact, inaccurate or incorrect, and there is nothing in the record indicating the information was inaccurate or incorrect. Additionally, there is nothing in the record indicating that CYFD's attorney advised Ms. Desiderio to testify falsely or coerced her into testifying falsely, or that Ms. Desiderio did in fact testify falsely. *See State v. Lopez*, 1986-NMCA-094, ¶ 42, 105 N.M. 538, 734 P.2d 778 (explaining that "it is patently improper for a prosecutor to advise a witness to testify falsely or to phrase a witness' testimony," but where "there is no showing in the record that the witness testified

7

falsely" then "[t]he record does not support the claim of improper coaching"). Because the treatment plan and court reports that served as the source of information for the outline were part of the record and available to Mother's attorney, and because nothing in the record indicates the outline or Ms. Desiderio's testimony was inaccurate or incorrect, the risk to Mother of an erroneous deprivation of her parental rights was low.

{12} Furthermore, the district court took several measures to prevent the risk of an erroneous deprivation, even after stating that it appeared Ms. Desiderio was testifying from her memory. The district court allowed both Mother's attorney and Father's attorney to question Ms. Desiderio as voir dire on the motion to strike her testimony. During this questioning, Ms. Desiderio stated that she did not read the narratives of the other CYFD employees in the outline. Ms. Desiderio explained that she only read the section labeled with her name, that CYFD's attorney did not tell her what to say during her testimony, and that there was nothing inaccurate in the outline because the outline contained what she remembered putting in her treatment plan and court reports. To the extent Mother argues a violation of due process because of Ms. Desiderio's exposure to the testimony of other witnesses, this argument is not supported by the record. Ms. Desiderio only actually read and relied upon the portion of the outline that pertained to her testimony.

{13} Moreover, the district court took the outline under seal and allowed both attorneys to fully cross-examine Ms. Desiderio. Courts that have considered witness coaching claims in the context of criminal trials have held that cross-examination is an adequate corrective measure. *Geders v. United States*, 425 U.S. 80, 89-90 (1976) ("The opposing counsel in the adversary system is not without weapons to cope with 'coached' witnesses. A prosecutor may cross-examine a defendant as to the extent of any 'coaching' . . . . Skillful cross-examination could develop a record which the prosecutor in closing argument might well exploit by raising questions as to the defendant's credibility[.]"). By taking the document under seal and allowing for voir dire in addition to cross-examination, the district court provided sufficient procedural safeguards. Any additional procedural safeguards would have had little effect on the risk of an erroneous deprivation.

{14} In sum, by allowing for cross-examination and voir dire, the district court sufficiently corrected any alleged impropriety in CYFD's handling of its witnesses, and therefore, Mother was not deprived of due process.

**C. Structural Error**

{15} Mother also argues that the violation of her due process rights is structural error, requiring automatic reversal. Mother argues the witness's memory was "replaced by the outline" prepared by CYFD, thereby depriving Mother of

meaningful cross-examination, an integral part of the trial process. Accordingly, Mother argues "reversal is required because the error affects the reliability and credibility of the judicial system itself."

{16} Whether the district court's actions amount to structural error is a legal question subject to de novo review. *State ex rel. Children, Youth & Families Dep't v. Brandy S.*, 2007-NMCA-135, ¶ 17, 142 N.M. 705, 168 P.3d 1129.

{17} "A structural error is a defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368 (internal quotation marks and citation omitted). Structural errors are rare. *See Brandy S.*, 2007-NMCA-135, ¶ 19. They have been found " 'only in a very limited class of cases.' " *Id.* (quoting *Neder v. United States*, 527 U.S. 1, 8 (1999)). "Such errors infect the entire trial process and necessarily render a trial fundamentally unfair." *Neder*, 527 U.S. at 8 (internal quotation marks and citations omitted).

{18} Assuming the doctrine of structural error applies to a termination hearing, we conclude there was no structural error in the present case. *See Brandy S.*, 2007-NMCA-135, ¶ 20 (holding no structural error and "[a]ssuming, without deciding, that the doctrine of structural error applies to TPR [termination of parental rights] proceedings"). As noted, courts have found structural error only in the most extreme

cases. For example, a defective reasonable doubt jury instruction may be reviewed for structural error. *Sullivan v. Louisiana*, 508 U.S. 275, 281-82 (1993). Racial discrimination in grand jury selection may also be reviewed for structural error. *Vasquez v. Hillery*, 474 U.S. 254, 261-64 (1986). Additionally, the denial of the right to self-representation at trial and a complete denial of counsel at trial have both been reviewed for structural error. *See McKaskle v. Wiggins*, 465 U.S. 168, 177-78 (1984) (discussing importance to trial of right to self-representation); *Gideon v. Wainwright*, 372 U.S. 335, 344-45 (1963) (discussing essential nature of counsel to criminal trial). This case does not belong in this class of cases. The proceedings were not rendered fundamentally unfair by the outline used to prepare CYFD's witnesses for the reasons noted above. Namely, Ms. Desiderio only read and relied on the portion of the outline that pertained to her testimony, which was created from her own court reports and treatment plan, and Mother was provided an opportunity to question and to cross-examine Ms. Desiderio. Notably, the district court spent several hours fleshing out the contents of the outline, the extent to which Ms. Desiderio relied on the outline, and the ways in which the substance of the outline pertaining to Ms. Desiderio were readily available to counsel through Ms. Desiderio's court reports. Therefore, we cannot conclude that Ms. Desiderio's testimony rendered the entire proceeding

fundamentally unfair. We hold that the facts of the present case do not support a finding of structural error.

**III.    CONCLUSION**

{19}    Mother received due process of law throughout the termination hearing given the district court's corrective response, and the claimed violation does not amount to structural error. We affirm the order terminating Mother's parental rights.

{20}    **IT IS SO ORDERED.**


_____
**STEPHEN G. FRENCH, Judge**

**WE CONCUR:**


_____
**JAMES J. WECHSLER, Judge**


_____
**J. MILES HANISEE, Judge**