This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-41439**

**STATE OF NEW MEXICO,**

     Plaintiff-Appellee,

v.

**JOAQUIN R. LUJAN,**

     Defendant-Appellant.

**APPEAL FROM THE METROPOLITAN COURT OF BERNAILLO COUNTY**
**Renée Torres, Metropolitan Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Charles J. Gutierrez, Supervising Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Anne Amicarella, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**BOGARDUS, Judge.**

**{1}**    Defendant Joaquin R. Lujan appeals his conviction for aggravated driving while under the influence of intoxicating liquor or drugs (DWI) (refusal), contrary to NMSA 1978, Section 66-8-102(D)(3) (2016). On appeal, Defendant argues: (1) structural error occurred when the metropolitan court did not afford him the presumption of innocence and consequently lowered the prosecution's burden of proof; and (2) the evidence was insufficient to convict Defendant. We affirm.

**BACKGROUND**

**{2}**     Defendant drove into a DWI sobriety checkpoint around 11:40 p.m. on July 22, 2022. At the checkpoint, Sergeant William Radasa informed Defendant that officers were conducting a sobriety checkpoint and asked him if he had consumed any alcohol or drugs before driving. Defendant informed Sergeant Radasa that he drank alcohol earlier that day. While speaking with Defendant, Sergeant Radasa smelled the odor of alcohol and asked Defendant to step out of his vehicle. At this point, Sergeant Radasa asked another officer, Officer David Savage, to continue the investigation of Defendant.

**{3}**     At trial, Officer Savage testified that as Defendant approached the patrol vehicle, his balance was compromised and he appeared to be "bobbing" and "stepping out of line." Defendant stated that he woke approximately three hours before and had a hangover from a party that happened the previous day. Defendant admitted that he had consumed a pint of rum to cure his hangover. Officer Savage further testified that Defendant's eyes were bloodshot and watery and that Defendant was speaking with a slur.

**{4}**     Before administering the field sobriety tests (FSTs), Officer Savage, who is certified in administering these tests, asked Defendant a few screening questions. Specifically, he asked Defendant whether he had any physical injuries, disabilities, or any problems turning, walking or balancing. Defendant did not report any medical conditions at this point that would affect his performance of the tests and he agreed to take them. Officer Savage testified that he did not observe any physical impairment or other characteristics that would impede Defendant's participation in FSTs, nor did the officer observe any wincing or pain from Defendant at this moment.

**{5}**     The first test that Defendant performed was the horizontal gaze nystagmus (HGN) test. Officer Savage testified that Defendant was unable to follow instructions and keep his head still so he had to administer the test twice. Defendant then performed the walk and turn test, and, according to Officer Savage, Defendant attempted the test before being told to do so, turned before completing the requisite number of steps, lifted his arm for balance, stepped off-line multiple times, and failed to walk heel to toe as required. During the test, Defendant stated that he could not do the test when "normal." The third test was the one-legged stand test—during the test, Defendant swayed heavily, had to use his arms to balance, and had to put his foot down multiple times. Defendant again stated that he could not do the test even when "normal"—although he did not specify what being normal meant.

**{6}**     Officer Savage then gave Defendant an alternative test because Defendant mentioned having back surgery while doing the three FSTs. Officer Savage asked Defendant to count backwards within a range of numbers. Defendant successfully counted backwards but forgot at which number he was required to stop. According to Officer Savage, Defendant became "extremely sweaty" and "extremely anxious" during the testing and he blamed the suboxone he had taken earlier that day.

**{7}** Officer Savage then transported Defendant to the New Mexico State Police office. He read Defendant the New Mexico implied consent advisory and advised Defendant that he had the option for an independent test. Officer Savage testified that Defendant appeared to understand the implied consent advisory, but that Defendant refused to take a breath test multiple times by stating "no."

**{8}** Over the course of the investigation, but after the FSTs had already begun, Defendant mentioned various medical conditions to Officer Savage. As a result of Defendant's claim of a number of medical conditions, and after Defendant refused the breath test, he was released to emergency medical personnel for treatment and for transport to the hospital. Defendant, however, refused transport to the hospital.

**{9}** After a bench trial, Defendant was convicted of one count of aggravated DWI. Defendant appeals.

## DISCUSSION

### I.      Structural and Fundamental Error

**{10}** Defendant first argues that structural error occurred when the metropolitan court did not afford him the presumption of innocence and, consequently, lowered the State's burden of proof. Specifically, Defendant asserts that the metropolitan court judge, during the recitation of fact-finding supporting the guilty verdict, referred to Defendant's charge as a reason to discredit his statements and also as support for the guilty verdict. According to Defendant, when the judge declared him not to be credible because of the criminal charge he was facing, it did the "direct opposite of affording him the presumption of innocence." Because defense counsel did not object to the judge's recitation of fact-finding supporting its guilty verdict, Defendant asks this Court to review for structural error.[1] Defendant argues that the court's "obvious use of the charges against [him] . . . as substantive evidence of guilt violated his constitutional rights to due process under the Fourteenth Amendment of the United States Constitution and [A]rticle II, [S]ection 14 of the New Mexico Constitution." Alternatively, Defendant asks this Court to apply a fundamental error analysis.

**{11}** The State responds that the metropolitan court did not commit structural or fundamental error because it did not violate Defendant's presumption of innocence by reasoning that he had a motive to lie during his testimony. According to the State, "it does not implicate the presumption of innocence for a fact[-]finder to consider a testifying defendant's interest in the outcome of trial, or motive to lie, in evaluating their credibility." The State also points out that Defendant cites no legal authority supporting

---

[1] Defendant also asserts that the metropolitan court, in considering whether Defendant was guilty, improperly considered the behavior of other people who were not associated with this case. Defendant cites to no evidence in the record supporting this claim of error, nor does he develop a legal argument connecting the relevant law to the specific facts of his case. For this reason, we decline to address this argument. *See Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076 (explaining that this Court has no duty to entertain a cursory argument that included no explanation of the party's argument and no facts that would allow this Court to evaluate the claim).

his contention that denying a defendant the presumption of innocence is a structural error. Finally, the State asserts that "[t]he metropolitan court announced its verdict after hearing and considering all the evidence, and there is no indication that it pre[]judged Defendant's guilt based on the fact that he was charged."

**{12}** A structural error is a "defect affecting the framework within which the trial proceeds, rather than simply an error in the trial process itself." *State ex rel. Child., Youth & Fams. Dep't v. Brandy S*., 2007-NMCA-135, ¶ 18, 142 N.M. 705, 168 P.3d 1129 (internal quotation marks and citation omitted). Structural error has been found only "in a very limited class of cases." *Id.* ¶ 19 (internal quotation marks and citation omitted). "For example, structural error has been found where there is a total deprivation of the right to counsel or when a trial has been conducted before a judge who is not impartial." *State v. Nguyen*, 2008-NMCA-073, ¶ 9, 144 N.M. 197, 185 P.3d 368. "Structural errors include such pervasive defects as racial discrimination in the selection of a grand jury, complete denial of the right to counsel, a significant defect in the reasonable-doubt instruction, and denial of the right to a public trial." *State v. Rivera*, 2012-NMSC-003, ¶ 20, 268 P.3d 40. "Such errors infect the entire trial process, and necessarily render a trial fundamentally unfair." *Id.* When structural error occurs, prejudice need not be shown and reversal is automatic. *See State v. Tollardo*, 2012-NMSC-008, ¶ 25, 275 P.3d 110. Whereas, to determine whether fundamental error has occurred, we employ a two-step process: first we must determine "whether error occurred," and if so, we must then determine "whether the error is fundamental." *State v. Ocon*, 2021-NMCA-032, ¶¶ 7-8, 493 P.3d 448.

**{13}** Having reviewed the record and based on the briefing before us, we are not persuaded that structural or fundamental error occurred.[2] Before the metropolitan court rendered its verdict, the judge discussed the facts put forth during the bench trial, pointing out those the court found most persuasive. The judge discussed the credibility of both Officer Savage and Defendant and noted that Officer Savage could have slowed down some aspects of the investigation and could have listened to Defendant more carefully, but the judge also reasoned that the officer did not target Defendant in any way. The judge, in assessing whether Defendant refused the breath test, stated that Defendant had "a reason to not necessarily tell the truth" and a reason to "avoid being in the court system and having a DWI." Finally, regarding Defendant's truthfulness to the officer at the DWI checkpoint, the judge stated that Defendant had a "motive to not tell the truth" regarding the amount of drinks he had that day. The judge then found Defendant guilty.

**{14}** Defendant fails to cite any legal authority in support of his claim that the types of comments made by the metropolitan court regarding his credibility—offered at the conclusion of a bench trial, after both parties had fully presented their evidence— effectively deprived him of the presumption of innocence, and, as a result, rose to the level of structural or fundamental error. The authority relied on by Defendant in his briefs in this Court involve substantially different circumstances than those before this Court in

---

[2]Because we conclude that Defendant has not established error in the metropolitan court's rendering of its guilty verdict, we simply assume without deciding that structural error applies in this context.

this case. This authority, therefore, is not persuasive. Reversal of a conviction on appeal requires that the Defendant establish that the district court erred. *See Hall v. City of Carlsbad*, 2023-NMCA-042, ¶ 5, 531 P.3d 642 ("[I]t is the appellant's burden to persuade us that the district court erred."). Defendant having failed to identify any error that requires reversal, we apply our presumption of correctness and affirm.

## II. Sufficiency of the Evidence

**{15}** Defendant also argues that the evidence presented at trial was insufficient to convict him of aggravated DWI. Specifically, Defendant contends that: (1) the evidence was insufficient to prove that he was under the influence of intoxicating liquor because any inadequacy in his FSTs was a result of various preexisting physical and cognitive issues, and (2) although he was conscious, he was incapable of submitting to a chemical test. We disagree.

**{16}** "The test for sufficiency of the evidence is whether substantial evidence . . . exists . . . of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Duran*, 2006-NMSC-035, ¶ 5, 140 N.M. 94, 140 P.3d 515 (internal quotation marks and citation omitted). "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *State v. Largo*, 2012-NMSC-015, ¶ 30, 278 P.3d 532 (internal quotation marks and citation omitted). "[W]e view the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Samora*, 2016-NMSC-031, ¶ 34, 387 P.3d 230 (internal quotation marks and citation omitted). "We will not substitute our judgment for that of the fact[-]finder, nor will we reweigh the evidence." *State v. Trujillo*, 2012-NMCA-092, ¶ 5, 287 P.3d 344.

**{17}** In order to convict Defendant of aggravated DWI, the State was required to prove that:

1. [D]efendant operated a motor vehicle;

2. At that time [D]efendant was under the influence of intoxicating liquor; that is, as a result of drinking liquor [D]efendant was less able to the slightest degree, either mentally or physically, or both, to exercise the clear judgment and steady hand necessary to handle a vehicle with safety to the person and the public; . . .

3. [D]efendant refused to submit to chemical testing; [and]

4. This happened in New Mexico, on or about [July 22, 2022].

*See* UJI 14-4508 NMRA. Defendant appears to take issue with the second and third elements. Further, refusal to submit to chemical testing is defined as follows:

[D]efendant refused to submit to chemical testing if:

1. [D]efendant was arrested on reasonable grounds to believe that [D]efendant was driving while under the influence of intoxicating liquor or drugs;

2. [D]efendant was advised by a law enforcement officer that failure to submit to the test could result in the revocation of [D]efendant's privilege to drive;

3. a law enforcement officer requested [D]efendant to submit to a chemical breath test;

4. [D]efendant was conscious and otherwise capable of submitting to a chemical test; and

5. [D]efendant willfully refused to submit to a breath test.

*See* UJI 14-4510 NMRA.

**{18}** We begin by addressing the second element. Based on our review of the record, we conclude that the State presented sufficient evidence to prove that Defendant was under the influence of intoxicating liquor. The State's evidence was not limited to Defendant's performance of the FSTs. Even excluding Defendant's performance on the FSTs from our analysis, the State presented evidence that Defendant admitted to consuming alcohol on the day of his arrest, his vehicle smelled of alcohol, Defendant had bloodshot and watery eyes and slurred his words, and as Defendant approached the patrol vehicle, his balance was compromised and he appeared to be "bobbing" and "stepping out of line." We conclude that this evidence was sufficient to prove that Defendant was impaired to the slightest degree by alcohol. *See, e.g.*, *State v. Soto*, 2007-NMCA-077, ¶ 34, 142 N.M. 32 (holding there was sufficient evidence to support a conviction where officers observed the defendant driving, where the defendant admitted to drinking, and where the defendant had bloodshot and water eyes, smelled of alcohol, and had slurred speech), *overruled on other grounds as recognized by State v. Cardona*, ___-NMCA-___, ¶ 7, ___P.3d___ (A-1-CA-40865, Jan. 22, 2025).

**{19}** Next, regarding the third element, we conclude that Defendant failed to demonstrate that he was incapable of submitting to a chemical test. According to Defendant, "he was too distracted by his level of pain and concerns about th[at] pain might mean" to consent to or refuse chemical testing. Defendant does not articulate an adequate legal argument, with citations to relevant authority tying such authority to the specific facts and circumstances of this case, demonstrating that any physical ailments he experienced left him incapable of submitting to the chemical test. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("To rule on an inadequately briefed issue, this Court would have to develop the arguments itself, effectively performing the parties' work for them."). Furthermore, Defendant's argument invites this Court to reweigh the evidence in his favor, which we are not at liberty to do. *See State v. Garcia*, 2011-NMSC-003, ¶ 5, 149 N.M. 185, 246 P.3d 1057 ("New Mexico

appellate courts will not invade the [fact-finder's] province . . . by second-guessing the [fact-finder's] decision concerning the credibility of witnesses, reweighing the evidence, or substituting its judgment for that of the [fact-finder]." (alterations, internal quotation marks, and citation omitted)).

**CONCLUSION**

**{20}** For the foregoing reasons, we affirm.

**{21} IT IS SO ORDERED.**

**KRISTINA BOGARDUS, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**JANE B. YOHALEM, Judge**